George Panagiotou (263172)
2404 Broadway
San Diego, CA 92102
Office: 858-300-0033
george@olympuslawcorp.com

Law Office of Stephan A. Hoover
Stephan A. Hoover, Esq. (299790)
stephan@hooverlawsd.com
P.O. Box 723
Carlsbad, CA 92018
Telephone: (619) 500-4525
Facsimile: (760) 687-0013

Attorney for Debtor,
Bistermu Mora Salgado

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re**<br><br>　　**Bistermu Mora Salgado,**<br><br>　　　　**Debtor.**<br>—————————————<br>**Bistermu Mora Salgado,**<br><br>　　　**Movant,**<br>**vs.**<br><br>**Lendify Financial, LLC,**<br><br>　　**Respondent.** | **Case No. 19-02556-LT7**<br><br>**Chapter: 7**<br><br>**Debtor's  Motion for Sanctions for Violations of the Automatic Stay and Discharge Injunction Against Lendify Financial, LLC a/k/a Aura Financial, LLC; Memorandum of Points and Authorities**<br><br>**Date:  April 2, 2020**<br>**Time: 10:00 a.m.**<br>**Dept: 3, Room 129**<br><br>**Judge: Hon. Laura S. Taylor** |

# Table of Contents

I.  INTRODUCTION ............................................................................................................1

II.  STATEMENT OF FACTS ...........................................................................................2

    A.  The Bankruptcy Case and Filing of Small Claims Case ......................................2

    B.  The Violation of the Automatic Stay ....................................................................2

    C.  The Violation of the Discharge Injunction ..........................................................3

III. LEGAL STANDARD ....................................................................................................4

    A.  Jurisdiction and Venue .........................................................................................4

    B.  The Court's Power to Enforce the Automatic Stay and Discharge ......................4

IV. ARGUMENT ..................................................................................................................5

    A.  Lendify' Claim Arose Before the Commencement of the Bankruptcy Case .......5

    B.  Lendify's Conduct Willfully Violated the Automatic Stay, Specifically 11 U.S.C. § 362(a)(1) ............................................................................................................5

        1.  Lendify Had Knowledge of the Bankruptcy Case and the Automatic Stay ....................7

        2.  Lendify Intended to File the Small Claims Action ...........................................7

    C.  Lendify's Conduct Willfully Violated the Discharge Order .................................7

        1.  Lendify's Claim was Discharged .......................................................................7

        2.  The Violation of the Discharge Order Warrants Imposition of Contempt Sanctions.......8

    D.  Lendify Has the Burden to Prove They Did Not Willfully Violate the Automatic Stay....11

    E.  Damages Due to the Debtor for Respondent's Violation of the Automatic Stay and Discharge Order .............................................................................................11

        1.  The Debtor's Time, Effort, and Resources ......................................................12

        2.  Lendify's Conduct Caused Emotional Distress ...............................................12

        3.  Debtor's Attorneys' Fees and Costs Incurred Rectifying the Respondent's Violation of 11 U.S.C. §§ 362 and 524 ..............................................................13

        4.  Lendify Should Pay a Noncompensatory Sanction Designed to Coerce Compliance with Bankruptcy Code Section 362(a) ...........................................15

V.  CONCLUSION ............................................................................................................16

# TABLE OF AUTHORITIES
## Cases

Bassett v. Am. Gen. Fin. (In re Bassett),
  255 B.R. 747, 758 (B.A.P. 9th Cir. 2000), rev'd on other grounds, 285 F.3d 882 (9th Cir. 2002) ................................................................................................................................ 10

Blum v. Stenson,
  465 U.S. 886 (1984) ........................................................................................................ 14

Boeing North American, Inc. v. Ybarra (In re Ybarra),
  424 F.3d 1018, 1022-1023 (9th Cir. 2005) ........................................................................ 8

Bucknum Moody v. R. Bucknum (In re Bucknum),
  951 F.2d 204, 207 (9th Cir. 1991) .................................................................................... 9

Cossio v. Cate (In re Cossio),
  163 B.R. 150, 155 (9th Cir. BAP 1994) ............................................................................ 9

Dawson v. Washington Mutual Bank (In re Dawson),
  390 F.3d 1139, 1148-49 (9th Cir. 2004) .................................................................... 12, 13

Eskanos & Adler, P.C. v. Leetien,
  309 F.3d 1210, 1215 (9th Cir. 2002) ............................................................................... 11

Eskanos & Adler, P.C. v. Roman (In re Roman),
  283 B.R. 1, 7 (B.A.P. 9th Cir. 2002) ............................................................................... 14

Gonzalez v. City of Maywood,
  729 F.3d 1196, 1204 n.3 (9th Cir. 2013) ......................................................................... 14

Hardy v. United States (In re Hardy),
  97 F.3d 1384, 1390 (11th Cir. 1996) ................................................................................. 9

Havelock v. Taxel (In re Pace),
  67 F.3d 187, 191 (9th Cir. 1995) ................................................................................. 6, 11

Hensley v. Eckerhart,
  461 U.S. 424, 433 (1983) ................................................................................................. 14

House v. Shapiro and Price,
  2011 U.S. Dist. LEXIS 38322 (E.D. WI 2011) ............................................................... 15

In re Barbour,
  77 B.R. 530, 531 (Bankr. E.D. N.C. 1987) ..................................................................... 12

In re Campion,
  294 B.R. 313, 317 (B.A.P. 9th Cir. 2003) ....................................................................... 11

In re Fausner,
  Case No. 14-3018 (S.D. Texas Feb. 16, 2016) ............................................................... 12

In re Kasl,
  2009 Bankr. LEXIS 2351, 17 (Bankr. C.D. Cal. Jan 13, 2009) ....................................... 9

In re Perviz,
  302 B.R. 357 (Bankr., N.D. Ohio 2003) ............................................................................ 9

In re Sansone,
  99 B.R. 981, 984 (Bankr. C.D. Cal. 1989) .................................................................. 7, 15

**Cases, *cont'd***

In re Schwartz-Tallard,
    Case No. 12-60052 at *10 (9th Cir. 2015) (en banc) ..............................6, 12, 14
In re Vanamann,
    561 B.R. 106, 115 n. 41 (Bankr. D. Nev. 2016)............................................13
In re Withrow,
    93 B.R. 436 (Bankr. W.D.N.C. 1988) .........................................................9
Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y,
    774 F.3d *950, *959 (9th Cir. Dec. 19, 2014)..............................................12
Jarvar v. Title Cash of Mont., Inc. (In re Jarvar),
    422 B.R. 242, 250 (Bankr. D. Mont. 2009)...................................................10
Kerr v. Screen Extras Guild, Inc.,
    526 F.2d 67 (9th Cir. 1975) ..................................................................14
Lindenbaum v. NCO Financial Systems,
    2011 U.S. Dist. LEXIS 78069 (E.D. PA 2011) .............................................15
Moreland v. Dorsey Thornton and Associates,
    2011 U.S. Dist. LEXIS 54487 (E.D. WI 2011) .............................................15
Nash v. Clark County District Attorney's Office (In re Nash),
    464 B.R. 874, 879-90 (B.A.P. 9th Cir. 2012)...............................................5, 8
Perry v. O'Donnell,
    759 F.2d 702, 705 (9th Cir. 1985).............................................................13
Pinkstaff v. United States (In re Pinkstaff),
    974 F.2d 113, 115 (9th Cir. 1992) .............................................................6
Price v. Lehtinen (In re Lehtinen),
    564 F.3d 1052, 1058 (9th Cir. 2009) ........................................................5, 15
Ramirez v. Fuselier (In re Ramirez),
    183 B.R. 583, 588 (B.A.P. 9th Cir. 1995) ...................................................12
Rediger Ivs. Corp. v. H Granados Communs., Inc. (In re H Granados Communs., Inc.),
    503 B.R. 726, 733 (B.A.P. 9th Cir. 2013) ...................................................6
Renwick v. Bennett (In re Bennett),
    298 F.3d 1059, 1069 (9th Cir. 2002) ......................................................5, 8, 11
Tolentino v. Friedman,
    46 F.3d 645, 652-653 (7th Cir. 1995)........................................................14
Zambrano v. City of Tustin,
    885 F.2d 1473, 1480 (9th Cir. 1989) ........................................................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Statutes**

11 U.S.C. § 101 ................................................................................................5
11 U.S.C. § 105 ............................................................................................4, 5
11 U.S.C. § 301 ................................................................................................4
11 U.S.C. § 362 ........................................................................................passim
11 U.S.C. § 727 ............................................................................................7, 8
28 U.S.C. § 157 ................................................................................................4
28 U.S.C. §1391 ...............................................................................................4

**Rules**

Fed. R. Bankr. Proc. Rule 9013 ........................................................................1
Fed. R. Bankr. Proc. Rule 9014 ........................................................................1
L.B.R. Rule 9013-4 ...........................................................................................1

## I. INTRODUCTION

Debtor Bistermu Mora Salgado ("Debtor" or "Mr. Mora"), the Chapter 7 debtor in the above-captioned bankruptcy case, identified as Case Number 19-02556-LT7 (the "Bankruptcy Case"), hereby files this "Motion for Sanctions for Violations of the Automatic Stay and Discharge Injunction Against Lendify Financial, LLC a/k/ Aura Financial, LLC" (the "Sanctions Motion") and moves pursuant to 11 U.S.C. §§ 362 and 524, Federal Rule of Bankruptcy Procedure (F.R.B.P.) Rule 9013 and 9014, and Local Bankruptcy Rules (L.B.R.) 9013-4 for an order for sanctions against Lendify Financial, LLC (hereinafter "Lendify" or "Respondent"), for willful violation of sections 362 and 524 of the Bankruptcy Code.

Specifically, Debtor seeks an award of sanctions under 11 U.S.C. § 362 as redress for Respondent's commencement and continuation, including the issuance and employment of process, of a judicial proceeding against the debtor that could have been commenced before the commencement of the bankruptcy case to recover a claim against the debtor that arose before the commencement of the bankruptcy case after having been notified of the bankruptcy and automatic stay.

Further, Debtor seeks a finding that Lendify is in contempt of the discharge injunction – the discharge has been entered in his case and Lendify has received notice of the discharge – as the continuation of the action through trial is a violation of the discharge injunction.

As discussed in detail below, there is cause to (1) find a willful violation of the automatic stay under 11 U.S.C. § 362 as to Respondent; (2) find a willful violation of the discharge injunction under 11 U.S.C. § 524 as to Respondent; and (3) award damages, including monetary damages, emotional distress damages, attorneys' fees and costs, and other appropriate sanctions for the willful violation of the automatic stay and discharge injunction by Respondent.

///
///

**II. STATEMENT OF FACTS**

    **A. THE BANKRUPTCY CASE AND FILING OF SMALL CLAIMS CASE**

On or about March 2, 2018, Debtor entered into an agreement with Lendify for a loan. (Declaration of Bistermu Mora Salgado ("Mora Dec."), ¶2). On April 30, 2019, Debtor filed a petition in bankruptcy under Chapter 7 of the U.S. Bankruptcy Code and the case was assigned to Judge Laura S. Taylor. (Mora Dec. ¶3, Exhibit "A" to the Request for Judicial Notice In Support of the Sanctions Motion (the "RJN"); ECF. 1). Debtor included Lendify in his schedules as creditor 4.5 and 4.6 included Lendify in his creditor matrix. (Dec. Mora, ¶4, ECF. 1, pgs. 23, 55).

Lendify was notified of the bankruptcy by the Bankruptcy Notification Center ("BNC"). ECF. 7. The Notice of Chapter 7 Bankruptcy Case states:

> The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors or the debtors' property. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although debtors can ask the court to extend or impose a stay.

Filing Notice, ECF. 7.

    **B. THE VIOLATION OF THE AUTOMATIC STAY**

On July 3, 2019, Lendify filed a small claims case in the Superior Court of California, County of San Diego, Case No. 37-2019-00034998-SC-SC-CTL. (Mora Dec. ¶5, Exhibit B). Lendify claims to be owed $1,691.01 stating "Defendant is delinquent under Defendant's loan agreement with Lendify Financial LLC dated 3/2/2018 and has not shown willingness to pay the delinquent amount" And stating the date of delinquency as December 26, 2018. (Mora Dec. ¶5, Exhibit C). Lendify

1  is seeking "Principal owed + finance charges + late fees".  (Mora Dec. ¶5, Exhibit

2  C).  The date for trial was set for October 7, 2019.  (Mora Dec. ¶5, Exhibit C).

3          **C.**    **THE VIOLATION OF THE DISCHARGE INJUNCTION**

4  On August, 6, 2019, the Court entered its Order Discharging Debtor.  ECF.

5  14.  On August 9, 2019, the BNC sent notice of the discharge to Lendify.  ECF. 15.

6  Lendify received not one, but two notices as to the bankruptcy and did not taken any

7  action to dismiss the small claims action which resulted, on October 7, 2019, in entry

8  of judgment for $1,237.00 in principal and $115.00 in costs.

9          To date, Debtor has incurred attorneys' fees and costs in pursuit of

10  enforcement of the automatic stay and discharge in this case for the multiple hours

11  spent by his attorneys working on this motion, order to show cause, and supporting

12  pleadings. (Hoover Dec. ¶2).  Debtor is represented by George Panagiotou and

13  Stephan A. Hoover. (Hoover Dec. ¶2). Mr. Panagiotou's and Mr. Hoover's current

14  billing rate is $315.00 per hour. (Hoover Dec. ¶2).  The Debtor, if the prevailing

15  party in this matter, is entitled to costs and a reasonable attorney fees described

16  below:

17          1) Mr. Panagiotou is an attorney working in bankruptcy and admitted to

18              practice in California since 2009.  (Hoover Dec. ¶2).  The billing rate

19              for Mr. Panagiotou is $315.00 per hour and in this matter at the time

20              this is drafted has spent multiple hours in consultation with the debtor

21              and co-counsel in reasonable efforts to enforce the automatic stay and

22              discharge injunction.  (Hoover Dec. ¶2).

23          2) Mr. Hoover is an attorney at Law Office of Stephan A. Hoover, working

24              in consumer protection litigation and bankruptcy litigation and

25              admitted to practice in California since 2014.  (Hoover Dec. ¶2).  Mr.

26              Hoover is a member of the National Association of Consumer

27              Bankruptcy Attorneys an organization of attorneys that advocates for

28              consumers nationwide regarding bankruptcy matters and provides

extensive training on consumer bankruptcy litigation. *See*, (Hoover Dec. ¶2). The current billing rate for Mr. Hoover is $315.00 per hour, and in this matter at the time this is drafted has spent multiple hours in consultation with co-counsel and drafting these pleadings in reasonable efforts to enforce the automatic stay and discharge injunction. (Hoover Dec. ¶2). With regard to costs, these costs include the postage, service fees, research fees, etc. required for the litigation. (Hoover Dec. ¶2).

These costs and fees encompass counsels' efforts in investigating Debtor's claims, researching, and drafting pleadings. Counsel has carefully reviewed the time records to ensure that only productive and necessary efforts are included.

## III.   LEGAL STANDARD

### A.   JURISDICTION AND VENUE

This Court has subject matter jurisdiction to hear this matter pursuant to 11 U.S.C. § 301, 11 U.S.C. § 362, 524 and 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(O), respectively. This matter is a core proceeding under 28 U.S.C. § 157 and therefore the Bankruptcy Court has jurisdiction to enter a final order. It is a core proceeding because the Debtor is asserting his rights created under 11 U.S.C. §§ 362, 524, and 105. The underlying bankruptcy case was filed in the Southern District of California Bankruptcy Court. Therefore, Venue lies in this District, pursuant to 28 U.S.C. §1391(b).

### B.   THE COURT'S POWER TO ENFORCE THE AUTOMATIC STAY AND DISCHARGE

"[A] petition … operates as a stay, applicable to all entities, of -" … "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362 (k)(1).

Violations of the discharge injunction under 11 U.S.C. § 524 must be pursued by means of a motion invoking the bankruptcy court's civil contempt powers under 11 U.S.C. § 105(a).  *Nash v. Clark County District Attorney's Office* (*In re Nash*), 464 B.R. 874, 879-90 (B.A.P. 9th Cir. 2012) and *Renwick v. Bennett* (*In re Bennett*), 298 F.3d 1059, 1069 (9th Cir. 2002)) ( "section 524(a) may be enforced by the court's contempt power under 11 U.S.C. section 105(a)").  The bankruptcy court also has inherent sanction authority.  *Price v. Lehtinen* (*In re Lehtinen*), 564 F.3d 1052, 1058 (9th Cir. 2009).  The bankruptcy court's inherent authority differs from the court's civil contempt power and the two are not interchangeable.  *Knupfer v. Lindblader* (*In re Dyer*), 322 F.3d 1178, 1196, (9th Cir. 2003).  Unlike civil contempt, a bankruptcy court must make a finding of bad faith or willful misconduct before imposing sanctions under its inherent authority.  *In re Lehtinen*, 564 F.3d at 1058.

## IV.   ARGUMENT

### A.   LENDIFY' CLAIM AROSE BEFORE THE COMMENCEMENT OF THE BANKRUPTCY CASE

A claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ... ."  11 U.S.C. § 101(5)(A).  A "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."  11 U.S.C. § 101(10)(B).

Lendify's claim arose due to the March 2, 2018, agreement between the Debtor and Lendify for a loan.  (Mora Dec. ¶2.  *See also*,  Exhibit C).  The Bankruptcy Case was initiated by the Debtor's petition for relief on April 30, 2019.  ECF. 1.  Thus as the claim of Lendify is a claim to a right of payment that arose before the order for relief concerning the debtor.

### B.   LENDIFY'S CONDUCT WILLFULLY VIOLATED THE AUTOMATIC STAY, SPECIFICALLY 11 U.S.C. § 362(A)(1)

Section 362(a)(1) of Title 11 operates as a stay of, "commencement or

continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; … ." 11 U.S.C. § 362(a)(1).

"The automatic stay provides the debtor with a 'breathing spell' from the harassing actions of creditors, and it protects the interests of all creditors by preventing 'dismemberment' of the debtor's assets before the debtor can formulate a repayment plan …" *In re Schwartz-Tallard*, Case No. 12-60052 at *10 (9th Cir. 2015) (*en banc*).  To establish that a compensable violation of any of the subsections of 11 U.S.C. § 362(a) have occurred, the conduct of the violating party must be "willful."  11 U.S.C. § 362(k).  In the context of a violation of 11 U.S.C. § 362(a), "willful" has a specific definition.  The Ninth Circuit Court of Appeals wrote,

> A "willful violation" does not require a specific intent to violate the automatic stay.  Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.  Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.
>
> *Pinkstaff v. United States* (*In re Pinkstaff*), 974 F.2d 113, 115 (9th Cir. 1992).  *See also In re Dyer*, 322 F.3d at 1191, (9th Cir. 2003) ("in determining whether the contemnor violated the stay, the focus 'is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue.'"); *Havelock v. Taxel* (*In re Pace*), 67 F.3d 187, 191 (9th Cir. 1995) (incorporating the willfulness standard of § 362(h) as explicated by *In re Pinkstaff*); *Rediger Ivs. Corp. v. H Granados Communs., Inc.* (*In re H Granados Communs., Inc.*), 503 B.R. 726, 733 (B.A.P. 9th Cir. 2013) (stating "it is irrelevant whether the party exhibit bad faith or had a subjective intent ... .")

1.  <u>Lendify Had Knowledge of the Bankruptcy Case and the</u>
<u>Automatic Stay</u>

"[K]nowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay provided under §362." *In re Sansone*, 99 B.R. 981, 984 (Bankr. C.D. Cal. 1989). Here, Lendify was sent the BNC notice of bankruptcy filing on May 3, 2019. (ECF. 7). Lendify from that time on was aware the Bankruptcy Case existed and therefore the automatic stay.

2.  <u>Lendify Intended to File the Small Claims Action</u>

Creditors have "an affirmative duty to remedy [their] automatic stay violation". *Knupfer v. Lindblade* (*In re Dyer*), 322 F.3d 1178, 1191-92 (9th Cir. 2003). *See also*, *Sternberg v. Johnston*, 595 F.3d 937, 945 (9th Cir. 2010), *rev'd on other grounds In re Schwartz-Tallard*, Case No. 12-60052 at *10 (9th Cir. 2015) (*en banc*) ("To comply with his 'affirmative duty' under the automatic stay, Sternberg needed to do what he could to relieve the violation.")

Lendify was informed of the bankruptcy filing and only then decided to file a small claims action in the County of San Diego. The filing of a court action is not an action that is done inadvertently. Lendify's instigation of judicial process is a violation of the automatic stay. The failure to dismiss the action after notice was an ongoing violation of the automatic stay.

**C.   LENDIFY'S CONDUCT WILLFULLY VIOLATED THE DISCHARGE ORDER**

1.  <u>Lendify's Claim was Discharged</u>

The discharge order, when entered, "discharges the debtor from all debts that arose before the date of the [bankruptcy filing]" and "operates as an injunction against ... continuation of an action, the employment of process, or an act, to collect ... any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 727(b); 11 U.S.C. §524(a)(2). "[A] claim arises, for purposes of discharge in bankruptcy, at the time of the events giving rise to the

1  claim." *Boeing North American, Inc. v. Ybarra* (*In re Ybarra*), 424 F.3d 1018, 1022-

2  1023 (9th Cir. 2005).

3      Lendify's claim, based upon the March 2, 2018 loan agreement, clearly

4  constitutes a debt that arose before the petition date of April 30, 2019. *See*, (Exhibit

5  C, ECF. 1).  As such, it falls within the parameters of the discharge described by 11

6  U.S.C. § 727(b).  The Debtor received his discharge on August 6, 2019.  (ECF. 14).

7  The claim was not deemed nondischargeable, and was not subject to a reaffirmation

8  agreement.  *See*, (RJN Exhibit A).  Accordingly, as a claim which arose before the

9  petition date, and which is not excepted from discharge under section 523, Lendify's

10  claim is a discharged debt subject to the protection of the discharge injunction of

11  section 524.

12          2.    The Violation of the Discharge Order Warrants Imposition of

13                Contempt Sanctions

14      Once a Debtor demonstrates that (1) the Creditor knew of the bankruptcy case,

15  and (2) intended the act that violated the court order, the burden shifts to the Creditor

16  to defend its violation of the court order. *In re Bennett*, 298 F.3d at 1069.  Section

17  105(a) civil contempt sanctions may be imposed for a violation of the discharge

18  injunction where the violation is "willful." *In re Nash*, 464 B.R. at 880.  The Ninth

19  Circuit standard for determining willfulness, in this context, requires that (1) the

20  violating party knew the discharge injunction applied, and (2) the violating party

21  intended the action that violated the discharge injunction.  *Id*. In addition, the

22  Supreme Court has determined there is an objective standard there must be "no fair

23  ground of doubt" as to whether the order prohibited the creditor's actions. *Taggert

24  v. Lorenzen*, 587 U.S. ____ (2019).

25              **a)**   *Lendify Knew the Court's Discharge Order Applied*

26      The Ninth Circuit, in adopting the rule from *Hardy v. United States* effectively

27  imposed a strict liability standard with respect to the first prong of the willfulness

28  test. *In re Dyer,* 322 F.3d at 1191; *Hardy v. United States* (*In re Hardy*), 97 F.3d

1    1384, 1390 (11th Cir. 1996) ("If the court on remand finds, as plaintiff claims, that

2    IRS received notice … and was thus aware of the discharge injunction, Mr. Hardy

3    will then have to prove only that IRS intended the actions which violate the stay.")

4         "Mail that is properly addressed, stamped and deposited into the mails is

5    presumed to be received by the addressee." *Bucknum Moody v. R. Bucknum* (*In re*

6    *Bucknum*), 951 F.2d 204, 207 (9th Cir. 1991).   "The presumption can only be

7    overcome by clear and convincing evidence that the mailing was not, in fact,

8    accomplished." *Id*.  *See also*, *Cossio v. Cate* (*In re Cossio*), 163 B.R. 150, 155 (9th

9    Cir. BAP 1994) aff'd mem., *Cate v. Cossio* (*In re Cossio*), 56 F.3d 70 (9th Cir. 1995)

10   (holding a certificate of mailing raises the presumption that the documents sent were

11   properly mailed and received.)   The failure of a creditor to process a properly

12   addressed and mailed notice does not support a finding that the creditor did not

13   receive notice of the bankruptcy case. *In re Perviz*, 302 B.R. 357 (Bankr., N.D. Ohio

14   2003); *In re Withrow¸* 93 B.R. 436 (Bankr. W.D.N.C. 1988).   A showing that a

15   creditor knew, or reasonably should have known of the bankruptcy case constitutes

16   a showing of actual knowledge. *In re Kasl*, 2009 Bankr. LEXIS 2351, 17 (Bankr.

17   C.D. Cal. Jan 13, 2009).

18        Here, Lendify gained knowledge of the Discharge Order shortly after being

19   sent notice of the Discharge Order through first class mail from the BNC on August

20   9, 2019. (ECF. 15.)  Lendify had fair notice as to the applicability of the Discharge

21   Order to Lendify's claim, thus satisfying the first prong of the analysis.  Satisfying

22   the first element, the Debtor then must only show Lendify intended the act that

23   violated the discharge injunction.

24              **b)**    *Lendify Intended the Continued Collection Activity*

25        In applying the second prong, the focus is not on the violating party's

26   subjective beliefs or intent, but whether the conduct in fact violated the discharge

27   order and there is "no fair ground of doubt" as to whether the order prohibited the

28   creditor's actions. *Taggert v. Lorenzen*, 587 U.S. ____ (2019); *Bassett v. Am. Gen.*

1    *Fin.* (*In re Bassett*), 255 B.R. 747, 758 (B.A.P. 9th Cir. 2000), *rev'd* on other

2    grounds, 285 F.3d 882 (9th Cir. 2002); *see also Jarvar v. Title Cash of Mont., Inc.*

3    (*In re Jarvar*), 422 B.R. 242, 250 (Bankr. D. Mont. 2009) ("A party's negligence or

4    absence of intent to violate the discharge order is not a defense against a motion for

5    contempt."). *See also*, *In re Segal*, BAP Nos. CC-14-1175-KuPaTa, *17 (9th Cir.

6    BAP, January 29, 2015) (*unpublished*) ("Faden's knowledge of the discharge

7    injunction on and after his admitted receipt of Segal's order to show cause motion

8    and Faden's failure to expeditiously dismiss out the Segals from his cross-complaint

9    dispels any doubt regarding Faden having the requisite knowledge for the

10   bankruptcy court to hold him in contempt for violation of the discharge injunction.")

11       Lendify, after receipt of the Discharge Notice, continued process against the

12   Debtor by not dismissing the small claims case.  (Exhibit B).  It is incontestable

13   Lendify was both aware of the bankruptcy and intended each of the discrete actions

14   taken in an attempt to collect upon their claim by pursuing Debtor to judgment.

15       The Discharge Notice received by Lendify clearly states, "**Creditors cannot**

16   **collect discharged debts**" in clear bold words.  (ECF. 15).  Further the Discharge

     Notice states,

17
         This order means that no one may make ***any attempt to collect a***
18       ***discharged debt*** from the debtors personally. For example, creditors
         cannot sue, garnish wages, assert a deficiency, or otherwise try to
19       collect from the debtors personally on discharged debts. Creditors
         cannot contact the debtors by mail, phone, or otherwise in any attempt
20       to collect the debt personally.  Creditors who violate this order can be
         required to pay debtors damages and attorney's fees.
21
22       (ECF. 15) (*emphasis added*)

23       As the Discharge Notice clearly states continued judicial process pursuing a

24   discharged debt is prohibited, it is objectively clear that there is no fair ground of

25   doubt the order prohibited Lendify's continuation with the small claims case and

26   trial on October 7, 2019, resulting in a judgment for $1,352.00.  Thus, Lendify

27   intended for the continuation of process and there is no fair ground of doubt that this

28   violated the discharge order.

**D.    LENDIFY HAS THE BURDEN TO PROVE THEY DID NOT WILLFULLY VIOLATE THE AUTOMATIC STAY**

Once a Debtor demonstrates that (1) the creditor knew of the bankruptcy case, and (2) intended the act that violated the stay, the burden shifts to the creditor to defend its violation of the automatic stay. *Renwick v. Bennett* (*In re Bennett*), 298 F.3d 1059, 1069 (9th Cir. 2002) (discussing the virtually identical standard for establishing a willful discharge violation and civil contempt sanctions).

A creditor's good faith belief that the creditor had the right to take the action is not relevant to determining if a violation was willful and thus made the creditor liable to the debtor for damages. *See*, *In re Pace*, 67 F.3d 187, 191 (9th Cir. 1995) ("Whether the party believes in good faith that it had a right to the property is not relevant"); *In re Campion*, 294 B.R. 313, 317 (B.A.P. 9th Cir. 2003) (holding computer error is not an excuse for violation of the stay); *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002) ("internal disorder does not excuse it from violating the automatic stay").

Here, there is no evidence that there was any good faith attempt at compliance with the Court's order to stay collections, it was months after the bankruptcy was filed that Lendify commenced judicial process against the Debtor. Likewise, there was no attempt to comply with the discharge order by dismissing the small claims action before trial occurred on October 7, 2019.

**E.    DAMAGES DUE TO THE DEBTOR FOR RESPONDENT'S VIOLATION OF THE AUTOMATIC STAY AND DISCHARGE ORDER**

As a result of the Respondent's willful violation of 11 U.S.C. § 362(a), pursuant to 11 U.S.C. § 362(k), Debtor is entitled to recover compensatory damages that include all actual damages – including for out of pocket expenses incurred because of the violations, emotional distress, and reasonable attorneys' fees and costs. *See In re Dyer*, 322 F.3d at 1189. Damage awards of attorneys' fees and costs for willful violations of the automatic stay are mandatory, not discretionary. *In re*

**1**  *Schwartz-Tallard*, 12-60052 at *12; *Ramirez v. Fuselier* (*In re Ramirez*), 183 B.R.

**2**  583, 588 (B.A.P. 9th Cir. 1995). Actual damages include emotional distress suffered

**3**  by the Debtor. *Dawson v. Washington Mutual Bank* (*In re Dawson*), 390 F.3d 1139,

**4**  1148-49 (9th Cir. 2004).

**5**  1.    <u>The Debtor's Time, Effort, and Resources</u>

**6**  The loss of income as a result of court appearances may be recovered as

**7**  compensatory damages. *In re Barbour*, 77 B.R. 530, 531 (Bankr. E.D. N.C. 1987).

**8**  Movants "are entitled to compensation for any actual damages suffered and

**9**  resources … that were wasted as a result of the Defendants' contumacious acts… ."

**10**  *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d *950,

**11**  *959 (9th Cir. Dec. 19, 2014) (discussing actual damages in the contempt context).

**12**  Debtor has gone to his attorneys' office for multiple consultations due to the

**13**  continued actions of Lendify to violate the stay and discharge. The expenses

**14**  incurred in these consultations and for any future depositions and hearing

**15**  appearances is actual damages requiring compensation from Lendify. The rate of

**16**  $50.00 per hour has been found to be a fair rate for the economic harm suffered by

**17**  a Debtor attempting to prosecute a claim. *In re Fauser*, Case No. 14-3018 (S.D.

**18**  Texas Feb. 16, 2016).

**19**  Debtor requests the Court allow for supplementary documentation regarding

**20**  the prosecution of this claim to assess the proper measure of these actual damages.

**21**  2.    <u>Lendify's Conduct Caused Emotional Distress</u>

**22**  A court may award emotional distress damages as an element of a

**23**  compensatory civil contempt sanctions award. *In re Dawson*, 390 F.3d at 1148. To

**24**  prove up an emotional distress claim, an individual must: "(1) suffer significant

**25**  harm, (2) clearly establish the significant harm, and (3) demonstrate a causal

**26**  connection between that significant harm and the violation of the automatic stay (as

**27**  distinct, for instance, from the anxiety and pressures inherent in the bankruptcy

**28**  process)." *Id*. at 1149. "[E]ven if the violation of the automatic stay was not

egregious, the circumstances may make it obvious that a reasonable person would suffer significant emotional harm. *Id*. at 1149.

> [A]n individual who suffers a violation of the Discharge Injunction is very different from an individual injured by a violation of the automatic stay or a violation of a plan confirmation order. In the latter situations, the bankruptcy process typically has not been completed and the anxieties and pressures continue. For the individual whose goal is to obtain a discharge, the anxieties and pressures should be relieved after the discharge is entered.

*In re Vanamann*, 561 B.R. 106, 115 n. 41 (Bankr. D. Nev. 2016).

Here, the Debtor has had the discharge injunction violated and the stay violated. The bankruptcy process has been completed and the anxieties and pressures should be relieved. Lendify's actions, or rather their inaction to halt their violative resort to the small claims court, has made the Debtor anxious beyond the normal stresses of the bankruptcy process have ended, and he should not be imperiled by the threat of any further litigation. (Mora Dec. ¶6). Mr. Mora now has a judgment entered against him, which in addition to causing emotional harm has negatively affected his credit reports.

The violation of both the automatic stay and discharge injunction in this instance clearly would make a reasonable person suffer significant emotional harm. As such, Debtor seeks $5,000.00 in emotional distress damages.

3.    Debtor's Attorneys' Fees and Costs Incurred Rectifying the Respondent's Violation of 11 U.S.C. §§ 362 and 524

"[T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order." *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985). Debtor incurred attorneys' fees and costs for their Counsels' efforts to rectify the stay violation in preparing and filing this motion. The award of damages upon a finding of a willful violation of the automatic stay is not discretionary. By using the words "shall recover," Congress

1  clearly intended the award to be mandatory. *Eskanos & Adler, P.C. v. Roman* (*In re*
2  *Roman*), 283 B.R. 1, 7 (B.A.P. 9th Cir. 2002); *In re Schwartz-Tallard*, 12-60052 at
3  *12 ("§ 362(k) makes such fee awards mandatory rather than discretionary …").

4      As such, Debtor's attorneys' fees and costs are mandatory actual damages.

5            a)    *Debtor's Attorneys' Fees Are to be Awarded Pursuant to*
6                *the Lodestar Formula*

7      The lodestar method of evaluating fees has replaced and/or subsumed most
8  of the factors set forth in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir.
9  1975). *See*, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1204 n.3 (9th Cir.
10  2013). Under the lodestar method, a reasonable attorney's fee is determined by
11  multiplying the attorney's reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S.
12  424, 433 (1983). In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court
13  held that the hourly rates to be employed in calculating reasonable fees are
14  determined by the "prevailing market rates in the relevant community, regardless
15  of whether the plaintiff is represented by private or nonprofit counsel." *Id*. at 895.
16  "The burden is on the plaintiff to produce evidence that the requested rates are in
17  line with those prevailing in the community for similar services by lawyers of
18  reasonably comparable skill, experience, and reputation." *Id*. (internal quotations
19  omitted). As to the number of hours reasonably expended, a fee applicant "should
20  make a good-faith effort to exclude … hours that are excessive, redundant, or
21  otherwise unnecessary." *Hensley*, 461 U.S. at 434.

22      Debtor's counsels' compensable time in this litigation appears in the
23  Statement of Facts, *supra*, and the accompanying declarations. (Hoover Dec. ¶2).
24  This amount of time is reasonable.   The standard hourly rates of $315.00 charged
25  by Mr. Hoover and Mr. Panagiotou are appropriate for attorneys of their experience
26  in this type of litigation. *Tolentino v. Friedman*, 46 F.3d 645, 652-653 (7th Cir.
27  1995) (refusing, in the FDCPA context, to lower the rate paid to counsel below
28  market value to "encourage able counsel" to take such cases). Mr. Hoover has

provided a U.S. Consumer Law Attorney Fee Survey Report for 2013-2014, indicating that a fee rate of $257-$306 is average for a consumer attorney with one to five years' experience in Southern California (Los Angeles Metro Area specified). (Hoover Dec. ¶4, Exhibit D, page 80.) Numerous courts have relied on this survey in determining rates in consumer law matters. *Lindenbaum v. NCO Financial Systems*, 2011 U.S. Dist. LEXIS 78069 (E.D. PA 2011); *House v. Shapiro and Price*, 2011 U.S. Dist. LEXIS 38322 (E.D. WI 2011); *Moreland v. Dorsey Thornton and Associates*, 2011 U.S. Dist. LEXIS 54487 (E.D. WI 2011).

### 4.   Lendify Should Pay a Noncompensatory Sanction Designed to Coerce Compliance with Bankruptcy Code Section 362(a)

"[P]unitive damages ... are imposed not only to punish, but also to deter the wrongdoer and any others who might consider engaging in the same kind of malicious conduct." *In re Sansone*, 99 B.R. 981, 989 (Bankr. C.D. Cal. 1989). "Civil penalties must either be compensatory or designed to coerce compliance." *In re Lehtinen*, 564 F.3d at 1059. "Bankruptcy courts are not authorized to award 'serious' criminal contempt sanctions, but 'relatively mild' non-compensatory fines may be permissible under some circumstances, especially when there is no other practicable means of addressing the contumacious conduct. *In re Segal*, 2015 Bankr. LEXIS at *18 (citing *In re Dyer*, 322 F.3d at 1193 & n.16). "Under no circumstance should the relatively mild non-compensatory fine exceed several thousand dollars." *Id*.

The inherent power allows the court to sanction a broad range of conduct, not only to remedy a violation of a specific order. *In re Dyer*, 322 F.3d at 1196. A bankruptcy court must make an explicit finding of bad faith or willful misconduct before imposing sanctions under its inherent authority. *In re Lehtinen*, 564 F.3d at 1058. The factors to consider before imposing a noncompensatory fine as a remedy for violation of the court's order are: (1) whether the fine is consistent with applicable statutes and rules; (2) whether the fine is necessary to support the proper

functioning of the court; (3) whether the fine is proportionate to the offense; and (4) whether the fine is consistent with the interests of justice. *See*, *Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989); *In re Segal*, 2015 Bankr. LEXIS 286, at *25.

A coercive fine of $1,352.00, as being directly proportional to the amount sought through the violative lawsuit is very appropriate to Lendify's failure to acknowledge their affirmative duty to comply with the automatic stay and discharge injunction.

## V.    CONCLUSION

The debt claimed by Lendify was a pre-petition claim subject to the stay and discharge. Once Respondent had notice of the bankruptcy they were under a positive obligation to dismiss or stay the small claims case. Further, after, being notified of the bankruptcy, Lendify was notified of the Discharge Order and continued judicial proceedings against the Debtor. As such, Lendify should be found in violation of the stay and sanctioned pursuant to section 362(k) of Title 11 and in violation of the discharge order pursuant to section 524 of Title 11.

WHEREFORE, for the reasons stated above, the Debtor respectfully requests the Court enter an Order for the following compensatory damages in the form of sanctions pursuant to 11 U.S.C. §§ 362(k) and 524 and the Court's inherent sanction power including but not limited to:

1) Actual damages for the time and expenses incurred by the Debtor and allow supplemental declarations regarding the amount spent out of pocket and time spent attending depositions and hearings on this matter;

2) Actual damages in the form of $5,000.00 to compensate the Debtor for the emotional distress caused by Lendify;

3) Actual damages for attorneys' fees and costs incurred at the time this motion was drafted, the Debtor requests this Court allow supplemental

declaration regarding further amounts incurred in pursuit of the sanctions;

4) Finding the violations of the automatic stay and discharge order were due to bad faith and/or willful misconduct;

5) A non-compensatory sanction of $1,352.00;

6) Bifurcation of the case as to the issues of liability and damages should an evidentiary hearing be needed;

7) Granting such other relief as the Court deems just and proper.

**Law Office of Stephan A. Hoover**

Date: February 8, 2020                    By: /s/ *Stephan A. Hoover*
                                               Stephan A. Hoover
                                               Attorney for Debtor