1  George Panagiotou (263172)
2  2404 Broadway
   San Diego, CA 92102
3  Office: 858-300-0033
4  george@olympuslawcorp.com

5  Law Office of Stephan A. Hoover
6  Stephan A. Hoover, Esq. (299790)
   stephan@hooverlawsd.com
7  P.O. Box 723
   Carlsbad, CA 92018
8  Telephone: (760) 707-3453
9  Facsimile: (760) 687-0013

10
    Attorney for Debtor,
11   Bistermu Mora Salgado

12          **UNITED STATES BANKRUPTCY COURT**
13          **SOUTHERN DISTRICT OF CALIFORNIA**

14  **In re**                              Case No. 19-02556-LT7
15       **Bistermu Mora Salgado,**        Chapter: 7
16              **Debtor.**                **Exhibits in Support of Debtor's**
                                           **Motion for Sanctions for Violations**
17  ────────────────                       **of the Automatic Stay and**
                                           **Discharge Injunction Against**
18  **Bistermu Mora Salgado,**             **Lendify Financial, LLC a/k/a Aura**
                                           **Financial, LLC**
19          **Movant,**
20  **vs.**
21  **Lendify Financial, LLC,**            **Date: April 2, 2020**
22                                         **Time: 10:00 a.m.**
            **Respondent.**                **Dept: 3, Room 129**
23
24                                         **Judge: Hon. Laura S. Taylor**
25
26
27
28

─────────────────────────────────────────────
EXHIBITS IN SUPPORT            – i –            Case no. 19-02556-LT7

| EXHIBIT | DESCRIPTION | PAGE NUMBER |
|---------|-------------|-------------|
| **B** | Register of Actions for Case. No. 37-2019-00034998-SC-SC-CTL | 2-3 |
| **C** | Plaintiff's Claim and Order to Go to Small Claims Court, Case. No. 37-2019-00034998-SC-SC-CTL | 4-9 |
| **D** | Excerpts from a U.S. Consumer Law Attorney Fee Survey Report for 2013-2014 | 10-61 |

**Law Office of Stephan A. Hoover**

Date: February 7, 2020          By: /s/ *Stephan A. Hoover*

Stephan A. Hoover
Attorney for Debtor

---

EXHIBITS IN SUPPORT          – 1 –          **Case no. 19-02556-LT7**

Exhibit B

**SUPERIOR COURT OF CALIFORNIA**
# County of SAN DIEGO

**Register of Actions Notice**

| | | | |
|---|---|---|---|
| Case Number: | 37-2019-00034998-SC-SC-CTL | Filing Date: | 07/03/2019 |
| Case Title: | Lendify Financial LLC vs Salgado [IMAGED] | Case Age: | 127 days |
| Case Status: | Post Judgment | Location: | Central |
| Case Category: | Small Claims | Judicial Officer: | |
| Case Type: | Small Claims | Department: | C-63 |

## Future Events

| Date | Time | Department | Event |
|---|---|---|---|
| No future events | | | |

## Participants

| Name | Role | Representation |
|---|---|---|
| Lendify Financial LLC | Plaintiff | |
| Salgado, Bistermu Mora; AKA : Mora, Bistermu | Defendant | |

## Representation

| Name | Address | Phone Number |
|---|---|---|
| No representation | | |

| ROA# | Entry Date | Short/Long Entry | Filed By |
|---|---|---|---|
| 1 | 07/03/2019 | Plaintiff's Claim and Order to go to Small Claims Court filed by Lendify Financial LLC. Refers to: Salgado, Bistermu | Lendify Financial LLC (Plaintiff) |
| 2 | 07/03/2019 | Case assigned to Department C-63. | |
| 3 | 07/09/2019 | Small Claims Court Trial scheduled for 10/07/2019 at 08:00:00 AM at Central in C-63 . | |
| 4 | 07/09/2019 | Case initiation form printed. | |
| 5 | 07/24/2019 | Proof of Service of Claim and Order to Defendant - Substitute filed by Lendify Financial LLC. Refers to: Salgado, Bistermu | Lendify Financial LLC (Plaintiff) |
| 7 | 10/07/2019 | The Court finds judgment on the Plaintiff's Claim and Order to go to Small Claims Court for Lendify Financial LLC  and against Bistermu Mora Salgado, AKA Bistermu  Mora   in the amount of: $1237.00 principal, $115.00 costs, $0 pre-judgment interest. | |
| 8 | 10/07/2019 | Minutes finalized for Small Claims Court Trial heard 10/07/2019 08:00:00 AM. | |
| 9 | 10/07/2019 | Notice of Entry of Judgment (Small Claims) SD generated. | |
| 10 | 10/07/2019 | Authorization to Appear on Behalf of Party (Small Claims) submitted by Lendify Financial LLC received but not filed on 10/07/2019. | Lendify Financial LLC (Plaintiff) |
| 11 | 10/07/2019 | Declaration of Non Military Status (Small Claims) submitted by Lendify Financial LLC received but not filed on 10/07/2019. | Lendify Financial LLC (Plaintiff) |
| 12 | 10/07/2019 | Affidavit - Other (Lendify Financial LLC Truth-In-Lending (Spanish Version)) submitted by Lendify Financial LLC received but not filed on 10/07/2019. | Lendify Financial LLC (Plaintiff) |

Exhibit C

## SC-100    Plaintiff's Claim and ORDER to Go to Small Claims Court

Clerk stamps date here when form is filed.

FILED

2015 JUL -3  PM 3: 17

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY. CA

### Notice to the person being sued:

- You are the defendant if your name is listed in ② on page 2 of this form. The person suing you is the plaintiff, listed in ① on page 2.
- You and the plaintiff must go to court on the trial date listed below. If you do not go to court, you may lose the case.
- If you lose, the court can order that your wages, money, or property be taken to pay this claim.
- Bring witnesses, receipts, and any evidence you need to prove your case.
- Read this form and all pages attached to understand the claim against you and to protect your rights.

### Aviso al Demandado:

- Usted es el Demandado si su nombre figura en ② de la página 2 de este formulario. La persona que lo demanda es el Demandante, la que figura en ① de la página 2.
- Usted y el Demandante tienen que presentarse en la corte en la fecha del juicio indicada a continuación. Si no se presenta, puede perder el caso.
- Si pierde el caso la corte podría ordenar que le quiten de su sueldo, dinero u otros bienes para pagar este reclamo.
- Lleve testigos, recibos y cualquier otra prueba que necesite para probar su caso.
- Lea este formulario y todas las páginas adjuntas para entender la demanda en su contra y para proteger sus derechos.

Fill in court name and street address:

**Superior Court of California, County of**
San Diego
San Diego Courthouse
330 W Broadway
SAN DIEGO CA 92101

Court fills in case number when form is filed.

**Case Number:**
**37-2019-00034998-SC-SC-CTL**

**Case Name:**
Lendify Financial LLC V Bistermu Mora Salgado aka Bistermu Mora

### Order to Go to Court

**The people in ① and ② must go to court:** *(Clerk fills out section below.)*

| Trial Date | Date | Time | Department | Name and address of court, if different from above |
|---|---|---|---|---|
| | 1. 10/07/19 | 8:00am | C-63 | 330 WEST BROADWAY SAN DIEGO, CA 92101 |
| | 2. | | | |
| | 3. | | | |
| | Date: JUL 09 2019 | Clerk, by ELVZ. E. Lopez , Deputy | | |

### Instructions for the person suing:

- You are the plaintiff. The person you are suing is the defendant. **Written** request for continuance must include a $10.00 **fee** and be submitted at least 10 days before trial date.
- *Before* you fill out this form, read form SC-100-INFO, *Information for the Plaintiff,* to know your rights. Get SC-100-INFO at any courthouse or county law library, or go to *www.courts.ca.gov/smallclaims/forms.*
- Fill out pages 2 and 3 of this form. Then make copies of **all** pages of this form. (Make one copy for each party named in this case and an extra copy for yourself.) Take or mail the original and these copies to the court clerk's office and pay the filing fee. The clerk will write the date of your trial in the box above.
- You must have someone at least 18—not you or anyone else listed in this case—give each defendant a court-stamped copy of all five pages of this form and any pages this form tells you to attach. There are special rules for "serving," or delivering, this form to public entities, associations, and some businesses. See forms SC-104, SC-104B, and SC-104C.
- **Go to court on your trial date listed above.** Bring witnesses, receipts, and any evidence you need to prove your case.

Judicial Council of California, www.courts.ca.gov
Revised January 1, 2017, Mandatory Form
Code of Civil Procedure, §§ 116.110 et seq.,
116.220(c), 116.340(g)

**Plaintiff's Claim and ORDER to Go to Small Claims Court**
**(Small Claims)**

SC-100, Page 1 of 5

Plaintiff *(list names):*

Lendify Financial LLC

**Case Number:**
37-2019-00034998-SC-SC-CTL

① **The plaintiff (the person, business, or public entity that is suing) is:**

Name: Lendify Financial LLC                              Phone: 888-552-7227

Street address:  333 Bush St. Floor 17.          San Francisco      CA      94104
                            *Street*                                    *City*              *State*     *Zip*

Mailing address *(if different):* _____
                            *Street*                                    *City*              *State*     *Zip*

**If more than one plaintiff, list next plaintiff here:**

Name: _____          Phone: _____

Street address: _____
                            *Street*                                    *City*              *State*     *Zip*

Mailing address *(if different):* _____
                            *Street*                                    *City*              *State*     *Zip*

☐ *Check here if more than two plaintiffs and attach form SC-100A.*

☐ *Check here if either plaintiff listed above is doing business under a fictitious name. If so, attach form SC-103.*

☐ *Check here if any plaintiff is a "licensee" or "deferred deposit originator" (payday lender) under Financial Code sections 23000 et seq.*

② **The defendant(the person, business, or public entity being sued) is:**

Name:  Bistermu Mora Salgado aka Bistermu Mora          Phone:  (619) 416-5696

Street address:   2408 FAIRMOUNT AVE APT G          SAN DIEGO      CA      92105
                            *Street*                                    *City*              *State*     *Zip*

Mailing address *(if different):* _____
                            *Street*                                    *City*              *State*     *Zip*

**If the defendant is a corporation, limited liability company, or public entity, list the person or agent authorized for service of process here:**

Name: _____          Job title, if known: _____

Address: _____
            *Street*                            *City*              *State*     *Zip*

☐ *Check here if your case is against more than one defendant, and attach form SC-100A.*

☐ *Check here if any defendant is on active military duty, and write his or her name here:* _____

③ **The plaintiff claims the defendant owes $** $1,691.01 . *(Explain below):*

a. Why does the defendant owe the plaintiff money?
Defendant is delinquent under Defendant's loan agreement with Lendify Financial LLC dated 3/2/2018
and has not shown willingness to pay the delinquent amount.

When did this happen? *(Date):* __12/26/2018__

b. If no specific date, give the time period:  *Date started:* _____  *Through:* _____

c. How did you calculate the money owed to you? *(Do not include court costs or fees for service.)*
Principal owed + finance charges + late fees

☐ *Check here if you need more space. Attach one sheet of paper or form MC-031 and write "SC-100, Item 3" at the top.*

Plaintiff *(list names):*

Lendify Financial LLC

| Case Number: |
|---|
| **37-2019-00034998-SC-SC-CTL** |

---

**(4)** **You must ask the defendant (in person, in writing, or by phone) to pay you before you sue. If your claim is for possession of property, you must ask the defendant to give you the property. Have you done this?**
☒ Yes    ☐ No    If no, explain why not:

_____

_____

---

**(5)** **Why are you filing your claim at this courthouse?**
**This courthouse covers the area** *(check the one that applies):*

a. ☐ (1) Where the defendant lives or does business.
     (2) Where the plaintiff's property was damaged.
     (3) Where the plaintiff was injured.
     (4) Where a contract (written or spoken) was made, signed, performed, or broken by the defendant *or* where the defendant lived or did business when the defendant made the contract.

b. ☒ Where the buyer or lessee signed the contract, lives now, or lived when the contract was made, if this claim, is about an offer or contract for personal, family, or household goods, services, or loans. *(Code Civ. Proc., § 395(b).)*

c. ☐ Where the buyer signed the contract, lives now, or lived when the contract was made, if this claim is about a retail installment contract (like a credit card). *(Civ Code, § 1812.10.)*

d. ☐ Where the buyer signed the contract, lives now, or lived when the contract was made, or where the vehicle is permanently garaged, if this claim is about a vehicle finance sale. *(Civ Code, § 2984.4.)*

e. ☐ Other *(specify):* _____

---

**(6)** **List the zip code of the place checked in ⑤ above** *(if you know):*   92105

---

**(7)** **Is your claim about an attorney-client fee dispute?** ☐ Yes   ☒ No
*If yes, and if you have had arbitration, fill out form SC-101, attach it to this form, and check here:* ☐

---

**(8)** **Are you suing a public entity?** ☐ Yes   ☒ No
*If yes, you must file a written claim with the entity first.* ☐ A claim was filed on *(date):* _____
*If the public entity denies your claim or does not answer within the time allowed by law, you can file this form.*

---

**(9)** **Have you filed more than 12 other small claims within the last 12 months in California?**
☒ Yes   ☐ No   *If yes, the filing fee for this case will be higher.*

---

**(10)** **Is your claim for more than $2,500?** ☐ Yes   ☒ No
*If yes, I have not filed, and understand that I cannot file, more than two small claims cases for more than $2,500 in California during this calendar year.*

**(11)** **I understand that by filing a claim in small claims court, I have no right to appeal this claim.**

I declare, under penalty of perjury under California State law, that the information above and on any attachments to this form is true and correct.

Date: 6/19/2019    Jacqueline Hernandez    ▶ _____
        *Plaintiff types or prints name here*    *Plaintiff signs here*

Date: _____

        *Second plaintiff types or prints name here*    *Second plaintiff signs here*

**Requests for Accommodations**
Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the trial. Contact the clerk's office for form MC-410, *Request for Accommodations by Persons With Disabilities and Response. (Civ. Code, § 54.8.)*

---

## SC-100 — Information for the defendant (the person being sued)

**"Small claims court"** is a special court where claims for $10,000 or less are decided. Individuals, including "natural persons" and sole proprietors, may claim up to $10,000. Corporations, partnerships, public entities, and other businesses are limited to claims of $5,000. (See below for exceptions.*) The process is quick and cheap. The rules are simple and informal. You are the *defendant*—the person being sued. The person who is suing you is the *plaintiff*.

**Do I need a lawyer?** You may talk to a lawyer before or after the case. But you *may not* have a lawyer represent you in court (unless this is an appeal from a small claims case).

**How do I get ready for court?** You don't have to file any papers before your trial, unless you think this is the wrong court for your case. But bring to your trial any witnesses, receipts, and evidence that supports your case. And read "Be Prepared for Your Trial" at *www.courts.ca.gov/smallclaims/prepare*.

**What if I need an accommodation?** If you have a disability or are hearing impaired, fill out form MC-410, *Request for Accommodations*. Give the form to your court clerk or the ADA/Access Coordinator.

**What if I don't speak English well?** Ask the court clerk as soon as possible if your court has a court-provided interpreter available and how to request one. A court-provided interpreter may not be available. Alternatively, you may bring an adult who is not a witness or an attorney to interpret for you or ask the court for a list of interpreters for hire.

**Where can I get the court forms I need?** Go to any courthouse or your county law library, or print forms at *www.courts.ca.gov/smallclaims/forms*.

**What happens at the trial?** The judge will listen to both sides. The judge may make a decision at your trial or mail the decision to you later.

**What if I lose the case?** If you lose, you may appeal. You'll have to pay a fee. (Plaintiffs cannot appeal their own claims.)

- If you were at the trial, file form SC-140, *Notice of Appeal*. You must file within 30 days after the clerk hands or mails you the judge's decision (judgment) on form SC-200 or form SC-130, *Notice of Entry of Judgment*.
- If you were not at the trial, fill out and file form SC-135, *Notice of Motion to Vacate Judgment and Declaration*, to ask the judge to cancel the judgment (decision). If the judge does not give you a new trial, you have 10 days to appeal the decision. File form SC-140.

For more information on appeals, see *www.courts.ca.gov/smallclaims/appeals*.

**Do I have options?**
Yes. If you are being sued, you can:

- **Settle your case before the trial.** If you and the plaintiff agree on how to settle the case, the plaintiff must file form CIV-110, *Request for Dismissal*, with the clerk. Ask the Small Claims Advisor for help.

- **Prove this is the wrong court.** Send a letter to the court *before* your trial explaining why you think this is the wrong court. Ask the court to dismiss the claim. You must serve (give) a copy of your letter (by mail or in person) to all parties. (Your letter to the court must say you have done so.)

- **Go to the trial and try to win your case.** Bring witnesses, receipts, and any evidence you need to prove your case. To have the court order a witness to go to the trial, fill out form SC-107 (*Small Claims Subpoena*) and have it served on the witness.

- **Sue the person who is suing you.** If you have a claim against the plaintiff, and the claim is appropriate for small claims court as described on this form, you may file *Defendant's Claim* (form SC-120) and bring the claim in this action. If your claim is for *more* than allowed in small claims court, you may still file it in small claims court if you give up the amount over the small claims value amount, or you may file a claim for the full value of the claim in the appropriate court. If your claim is for more than allowed in small claims court *and* relates to the same contract, transaction, matter, or event that is the subject of the plaintiff's claim, you may file your claim in the appropriate court and file a motion to transfer the plaintiff's 's claim to that court to resolve both matters together. You can see a description of the amounts allowed in the paragraph above titled **"Small Claims Court."**

- **Agree with the plaintiff's claim and pay the money.** Or, if you can't pay the money now, go to your trial and say you want to make payments.

- **Let the case "default."** If you don't settle and do not go to the trial (default), the judge may give the plaintiff what he or she is asking for plus court costs. If this happens, the plaintiff can legally take your money, wages, and property to pay the judgment.

**What if I need more time?**
You can change the trial date if:

- You cannot go to court on the scheduled date (you will have to pay a fee to postpone the trial), *or*
- You did not get served (receive this order to go to court) at least 15 days before the trial (or 20 days if you live outside the county), *or*
- You need more time to get an interpreter. One postponement is allowed, and you will not have to pay a fee to delay the trial.

Ask the Small Claims Clerk about the rules and fees for postponing a trial. Or fill out form SC-150 (or write a letter) and mail it to the court *and* to all other people listed on your court papers before the deadline. Enclose a check for your court fees, unless a fee waiver was granted.

 **Need help?**
Your county's Small Claims Advisor can help for free.

**(858) 634-1777 Advisor's Number**
**(858) 634-1900 Recorded Information**

Or go to *www.courts.ca.gov/smallclaims/advisor*.

* Exceptions: Different limits apply in an action against a defendant who is a guarantor. (See Code Civ. Proc., § 116.220(c).)

## SC-100     Información para el demandado (la persona demandada)

La "Corte de reclamos menores" es una corte especial donde se deciden casos por $10,000 o menos. Los individuos, o sea las "personas físicas" o los propietarios por cuenta propia, pueden reclamar hasta $10,000. Las corporaciones, asociaciones, entidades públicas y otras empresas solo pueden reclamar hasta $5,000. (Vea abajo para las excepciones.*) El proceso es rápido y barato. Las reglas son sencillas e informales. Usted es el Demandado—la persona que se está demandando. La persona que lo está demandando es el Demandante.

**¿Necesito un abogado?** Puede hablar con un abogado antes o después del caso. Pero no puede tener a un abogado que lo represente ante la corte (a menos que se trate de una apelación de un caso de reclamos menores).

**¿Cómo me preparo para ir a la corte?** No tiene que presentar ningunos papeles antes del juicio, a menos que piense que ésta es la corte equivocada para su caso. Pero lleve al juicio cualquier testigos, recibos y pruebas que apoyan su caso. Y lea "Esté preparado para su juicio" en www.courts.ca.gov/reclamosmenores/prepárese.

**¿Qué hago si necesito una adaptación?** Si tiene una discapacidad o tiene impedimentos de audición, llene el formulario MC-410, Request for Accomodations. Entregue el formulario al secretario de la corte o al Coordinador de Acceso/ADA de su corte.

**¿Qué pasa si no hablo bien inglés?** Pregúntele al secretario de la corte lo más pronto posible si en el juzgado habrá un intérprete disponible y cómo solicitarlo. No siempre están disponibles los intérpretes de la corte. Otra opción es llevar a un adulto que pueda interpretar para usted siempre que esa persona no sea un testigo ni un abogado. O puede pedir a la corte una lista de intérpretes particulares disponibles para contratar.

**¿Dónde puedo obtener los formularios de la corte que necesito?** Vaya a cualquier edificio de la corte, la biblioteca legal de su condado, o imprima los formularios en www.courts.ca.gov/ smallclaims/forms (página está en inglés).

**¿Qué pasa en el juicio?** El juez escuchará a ambas partes. El juez puede tomar su decisión durante la audiencia o enviársela por correo después.

**¿Qué pasa si pierdo el caso?** Si pierde, puede apelar. Tendrá que pagar una cuota. (El Demandante no puede apelar su propio reclamo.)

- Si estuvo presente en el juicio, llene el formulario SC-140, Aviso de apelación (Notice of Appeal). Tiene que presentarlo dentro de 30 días después de que el secretario le entregue o envíe la decisión (fallo) del juez en el formulario SC-200 o SC-130, Aviso de publicación del fallo (Notice of Entry of Judgment).

- Si no estuvo en el juicio, llene y presente el formulario SC-135, Aviso de petición para anular el fallo y Declaración para pedirle al juez que anule el fallo (decisión). Si la corte no le otorga un nuevo juicio, tiene 10 días para apelar la decisión. Presente el formulario SC-140.

Para obtener más información sobre las apelaciones, vea www.courts.ca.gov/reclamosmenores/apelaciones.

**¿Tengo otras opciones?** Sí. Si lo están demandando, puede:

- **Resolver su caso antes del juicio.** Si usted y el Demandante se ponen de acuerdo en cómo resolver el caso, el Demandante tiene que presentar el formulario CIV-110, Solicitud de desestimación (Request for Dismissal) ante el secretario de la corte. Pídale al Asesor de Reclamos Menores que lo ayude.

- **Probar que es la corte equivocada.** Envíe una carta a la corte antes del juicio explicando por qué cree que es la corte equivocada. Pídale a la corte que despida el reclamo.Tiene que entregar (dar) una copia de su carta (por correo o en persona) a todas las partes. (Su carta a la corte tiene que decir que hizo la entrega.)

- **Ir al juicio y tratar de ganar el caso.** Lleve testigos, recibos y cualquier prueba que necesite para probar su caso. Si desea que la corte emita una orden de comparecencia para que los testigos vayan al juicio, llene el formulario SC-107, Citatorio de reclamos menores (Small Claims Subpoena) y entrégueselo legalmente al testigo.

- **Demandar a la persona que lo demandó.** Si tiene un reclamo contra el Demandante, y el reclamo se puede presentar en la corte de reclamos menores, tal como se describe en este formulario, puede presentar el formulario SC-120, Reclamo del demandado (Defendant's Claim) y presentarlo en este mismo caso. Si su reclamo excede el límite permitido en la corte de reclamos menores, puede igualmente presentarlo en la corte de reclamos menores si está dispuesto a limitar su reclamo al máximo permitido, o puede presentar un reclamo por el monto total en la corte apropiada. Si su reclamo excede el límite permitido en la corte de reclamos menores y está relacionado con el mismo contrato, transacción, asunto o acontecimiento que el reclamo del Demandante, puede presentar su reclamo en la corte apropiada y presentar una moción para transferir el reclamo del Demandante a dicha corte, para poder resolver los dos reclamos juntos. Puede ver una descripción de los montos permitidos en el párrafo anterior titulado "Corte de reclamos menores".

- **Aceptar el reclamo del Demandante y pagar el dinero.** O, si no puede pagar en ese momento, vaya al juicio y diga que quiere hacer los pagos.

- **No ir al juicio y aceptar el fallo por falta de comparecencia.** Si no llega a un acuerdo con el Demandante y no va al juicio (fallo por falta de comparecencia), el juez le puede otorgar al Demandante lo que está reclamando más los costos de la corte. En ese caso, el Demandante legalmente puede tomar su dinero, su sueldo o sus bienes para cobrar el fallo.

**¿Qué hago si necesito más tiempo?** Puede cambiar la fecha del juicio si:

- No puede ir a la corte en la fecha programada (tendrá que pagar una cuota para aplazar el juicio), o
- No le entregaron los documentos legalmente (no recibió la orden para ir a la corte) por lo menos 15 días antes del juicio (ó 20 días si vive fuera del condado), o
- Necesita más tiempo para conseguir intérprete. (Se permite un solo aplazamiento sin tener que pagar cuota para aplazar el juicio).

Pregúntele al secretario de reclamos menores sobre las reglas y las cuotas para aplazar un juicio. O llene el formulario SC-150 (o escriba una carta) y envíelo antes del plazo a la corte y a todas las otras personas que figuran en sus papeles de la corte. Adjunte un cheque para pagar los costos de la corte, a menos que le hayan dado una exención.

 **¿Necesita ayuda?** El Asesor de Reclamos Menores de su condado le puede ayudar sin cargo.

**(858) 634-1777 Número de Teléfono**
**(858) 634-1900 Información**

O visite www.courts.ca.gov/reclamosmenores/asesores.

* Excepciones: Existen diferentes límites en un reclamo contra un garante. (Vea el Código de Procedimiento Civil, sección 116.220 (c).)

Revised January 1, 2017     **Reclamo del Demandante y ORDEN**     **SC-100,** Page 5 of 5
**Para Ir a la Corte de Reclamos Menores**
**(Reclamos Menores)**

For your protection and privacy, please press the Clear This Form button after you have printed the form.



Print this form     Save this form

Exhibit D

# UNITED STATES CONSUMER LAW

# ATTORNEY FEE SURVEY REPORT

# 2013-2014



## Ronald L. Burdge, Esq.

# United States Consumer Law
# Attorney Fee Survey Report 2013-2014

Conducted By

Ronald L. Burdge, Esq.
Burdge Law Office Co. LPA
2299 Miamisburg Centerville Road
Dayton, OH 45459-3817
Voice: 937.432.9500
Fax: 937.432.9503

Email: Ron@TheLawCoach.com

Copyright © 2015 by R.L.Burdge

All rights reserved. This publication contains the results of proprietary research. No part of this book may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopying, recording, or by any information storage and retrieval system without prior permission in writing from the publisher.

This publication was created to provide you with accurate and authoritative information concerning the subject matter covered. The publisher is not engaged in rendering legal or other professional advice and this publication is not a substitute for the advice of an attorney or expert. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

This work is dedicated to the private and public practice members of the Consumer Law bar and the Judges who decide Consumer Law cases across the United States and its territories, all of whom tirelessly dedicate their careers to helping people find justice every day in our legal system. Without their support and participation the research for this publication would not have been possible.

A special thanks is extended to Ira Rheingold, Executive Director of the National Association of Consumer Advocates and Willard Ogburn, Executive Director of the National Consumer Law Center for their leadership, friendship, advice and tireless support of this research work during the last 15 years. Also, my sincerest of thanks is extended to Jon Sheldon of the National Consumer Law Center for his constant encouragement of this project since the survey began in 1999.

Ronald L. Burdge, Esq.
March 2, 2015

Table of Contents

1. Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    Error Rate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    Methodology. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    Section 508 Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    The Average and the Median: What it Means to You. . . . . . . . . . . . 6
    Geographic Areas Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    Interpreting the Findings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

2. Summary Profile of the Typical US Consumer Law Attorney. . . . . . . . 11

3. Region Summary Profiles. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    Summary Profile of Atlantic Region. . . . . . . . . . . . . . . . . . . . . . . . . 15
    Summary Profile of the California Region. . . . . . . . . . . . . . . . . . . 17
    Summary Profile of the Florida Region. . . . . . . . . . . . . . . . . . . . . . . 18
    Summary Profile of the Mid West Region. . . . . . . . . . . . . . . . . . . . . 19
    Summary Profile of the New York Region. . . . . . . . . . . . . . . . . . . . . 20
    Summary Profile of the North East Region. . . . . . . . . . . . . . . . . . . . 21
    Summary Profile of the Ohio Region. . . . . . . . . . . . . . . . . . . . . . . . . 22
    Summary Profile of the Pacific Region. . . . . . . . . . . . . . . . . . . . . . . 23
    Summary Profile of the South Region. . . . . . . . . . . . . . . . . . . . . . . . 25
    Summary Profile of the Texas Region. . . . . . . . . . . . . . . . . . . . . . . . 26
    Summary Profile of the US Territories Region. . . . . . . . . . . . . . . . 27
    Summary Profile of the West Region. . . . . . . . . . . . . . . . . . . . . . . . 28

4. Region Average Table for All Firms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

5. Region Tables. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    Explanation of Tables. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    Atlantic Region. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    California Region. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    Florida Region. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    Mid West Region. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
    New York Region. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
    North East Region . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
    Ohio Region. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    Pacific Region. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    South Region. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
    Texas Region . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
    US Territories Region. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
    West Region. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

6. Selected States Summary Tables. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
    Explanation of Tables. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

i

Alabama.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
Arizona. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
California.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
Colorado. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
Connecticut. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
District of Columbia.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
Florida.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
Georgia. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
Illinois. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
Indiana. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
Kentucky. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
Massachusetts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
Michigan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
Minnesota. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
Missouri.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
Nebraska. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
Nevada.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
New Jersey. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64
New York.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65
North Carolina. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66
Ohio.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67
Oklahoma. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68
Oregon. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
Pennsylvania.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70
Texas. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71
Virginia. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
Washington.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73
West Virginia. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74
Wisconsin. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75


7. Metropolitan Area Tables. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76
Explanation of Table. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76
Birmingham, Alabama.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78
Phoenix, Arizona. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79
Los Angeles, California. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80
San Francisco, California.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81
Sacramento, California. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82
Denver, Colorado. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
New Haven-Bridgeport, Connecticut.. . . . . . . . . . . . . . . . . . . . . . . . 84
Hartford, Connecticut. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85
Jacksonville, Florida. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86
Miami, Florida. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87
Tampa, Florida.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88
Orlando, Florida.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89
Atlanta, Georgia. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

Chicago, Illinois. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91
Indianapolis, Indiana.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92
Lexington, Kentucky. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93
Baltimore, Maryland. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93
Boston, Massachusetts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95
Detroit, Michigan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96
Lansing, Michigan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 97
Minneapolis - St Paul, Minnesota. . . . . . . . . . . . . . . . . . . . . . . . . 98
Columbia, Missouri. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 99
Kansas City, Missouri. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100
St Louis, Missouri. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101
Omaha, Nebraska.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102
Las Vegas, Nevada. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 103
Newark, New Jersey.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104
Trenton, New Jersey. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 105
Albany, New York.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 106
New York City, New York. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 107
Rochester, New York. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108
Raleigh, North Carolina.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
Cincinnati, Ohio. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 110
Cleveland - Akron - Canton, Ohio. . . . . . . . . . . . . . . . . . . . . . . . . 111
Columbus, Ohio. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 112
Oklahoma City, Oklahoma. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113
Portland, Oregon. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114
Philadelphia, Pennsylvania. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 115
Pittsburg, Pennsylvania.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116
Providence, Rhode Island. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117
Dallas – Fort Worth, Texas. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118
Houston, Texas.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119
San Antonio, Texas. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120
Richmond, Virginia. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 121
Norfolk – Virginia Beach, Virginia.. . . . . . . . . . . . . . . . . . . . . . . . . 122
Milwaukee, Wisconsin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 123

8. Survey Techniques.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 124

9. Cases Employing Use of Survey Report. . . . . . . . . . . . . . . . . . . . 125

10. Cases on Use of Survey Data.. . . . . . . . . . . . . . . . . . . . . . . . . . 131

11. Recommendations for Future Survey Data.. . . . . . . . . . . . . . . . . 133

11. Survey Questions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 134

12. About the Editor.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 139

iii

## 1. Introduction

This report publishes the results of the United States Consumer Law Attorney Fee Survey for 2013-2014. Survey results reported here cover every region, state, metropolitan area and non-metropolitan area in the United States and its Territories.

Several changes in format and content are introduced with this edition of the Survey Report that the reader may notice. One of those is that there is no longer a separate section for the hourly rates by years in practice tables. Those tables are now included under Section 5, the Region Tables. The title of that section was also shortened to indicate that all tables applicable to the Region are placed there. This change enables easier analysis of all data on a regional approach, rather than having to consult two different sections of the Report to obtain data applicable to one region.

After this introductory section, the results of this survey are reported in six sections.

Section 2 of this Survey Report is the Summary Profile of the Typical US Consumer Law Attorney, a collective approach to the entire survey results which yields a detailed picture of key aspects of the typical US Consumer Law practitioner in the United States and its territories. It is based on the survey results as a whole and may serve as a benchmark for regional, state and metropolitan comparisons by the reader.

Section 3 contains the Regional Summary Profiles analyses which reports a summary profile of the typical Consumer Law attorney in each of the 12 regions in the survey. It provides a collective approach to each region's survey results, which yields a more detailed summary picture of key aspects of the typical US Consumer Law practitioner in each survey Region. Although more detailed localized data is provided for the first time with this year's Report, the larger viewpoint on the data can only be represented by the Regional view's broader perspective. The Regional  Summary Profile also is the only portion of the survey data that aligns with the only other similar survey known to exist, although it is not specific to Consumer Law.

1

Section 4 contains the Region Average Table for All Firms. This section reports the regional average hourly rates according to small and large firm classification and includes both attorney rates and paralegal rates. This table gives a broad overview at a glance with easy side by side comparisons of key data. It also is the only part of the survey that allows the reader to see the relative survey participation from each of the 12 surveyed regions.

Section 5 includes the Region Tables. These tables combine those sections that were previously reported in two sections, the Averages and Medians Tables and the Years in Practice Tables. Included in the two separate tables in this section of the Report, on a regional basis, is results of key survey questions and the average hourly rates according to only the number of years an attorney has been practicing law. It was deemed appropriate to combine the two types of tables so that all data for any one Region would be in one place in this Report, for the reader's easy analysis and use.

Section 6 contains data for 29 selected states and the District of Columbia. These selections were made based chiefly on the basis of their larger population count. Together these 30 high-population areas represent 81.2% of the total US population according to the US Census Bureau's 2015 estimates. The concentrated location of this significant portion of the US population makes a closer analysis of the data in these states particularly worthwhile since these are where the greatest quantity of consumers, consumer transactions, and Consumer Law attorneys can be expected to be found. This section contains, for each state and the District, similar Averages and Medians Tables as included in Section 5, but adds seven new attorney hourly points of data. Both the median metropolitan and the non-metropolitan attorney hourly rate are included along with the median attorney hourly rate in each of the five areas of the state. This allows for rate data to be localized far more than ever before.

Section 7 contains the metropolitan area tables for 46 metropolitan areas in the United States. Once again, these selections were made based chiefly on the basis of their larger population count. Together these metropolitan areas total an estimated 176,261,427 which is about 55% of the entire US population. This section contains, for each metropolitan area, similar averages and medians tables as were included in Section 5 and adds the years in practice tables to the metropolitan area analysis. This approach

2

allows for far more localized data reported than ever before in our Survey.

Attorneys in every state and the US Territories took part in the national survey and the results are the most comprehensive since our continuous research work began in 1999.

Consumer Law is recognized as a specialized area of law[1] dealing with issues arising from transactions involving one or more persons acting as individuals or as a family. Consumer Law, as an area of practice, typically includes bankruptcy, credit discrimination, consumer banking, warranty law, unfair and deceptive acts and practices, and more narrow topics of consumer law such as consumer protection rights enabled by specific statutes such as the Fair Credit Reporting Act, the Uniform Consumer Sales Practices Act, state and federal lemon laws, and many others.

Prior studies have shown that the factors most influencing an hourly rate are an attorney's years in practice, location of practice, and size of firm. These factors are variously surveyed and reported in this publication. More detailed location of practice data, and related customized data in relation to locale, is published in the separately available localized Reports and is available upon request.

In compiling this report, a valuable contribution was made by members of the National Association of Consumer Advocates and Consumer Law attorneys across the United States and its territories who were invited to participate during 2013 and 2014.

As previously, an on-line survey service was utilized to gather and tabulate the results with safeguards in place to limit data input to one participant per survey.

Similar studies were undertaken annually since 1999. The objective of these studies was to determine the demographics of Consumer Law private practitioners, including attorney hourly billing rate, firm size, years in

---

[1] As said by the Ohio 9th District Court of Appeals, "[c]onsumer law is a specialty area that is not common among many legal practitioners." *Crow v. Fred Martin Motor Co.*, 2003-Ohio-1293 (Summit App. No. 21128).

practice, concentration of practice, primary and secondary practice area prevalence, paralegal billing rates and other data.

The collected information has been condensed into this national reference to provide benchmarks to assist Consumer Law attorneys as they manage their practice and Courts as they seek to determine applicable reasonable hourly rates in cases before them.

Because of the ever increasing involvement of paralegals in the non-administrative daily aspects of a legal practice in most states, data is also presented on paralegal hourly rates.

The data is reported in various tables below, allowing the reader to consider the data from several viewpoints of selected factors or criteria. In addition, more detailed regional data with explanatory charts is available on request for any state, the geographical area of any state and the metropolitan area of any state.

## Error Rate

Before this publication, a hand selected review was conducted of selected data received during this survey and compared with the data reported in the previous survey. The results indicate an error rate of less than one percent in the present survey Report, a number substantially lower than the error rate of most similar types of surveys.

## Methodology

Survey results are based on the results of an on-line survey fielded during 2013 and 2014 and consisting of eleven key data questions. The survey was administered via email, ordinary mail, facsimile and telephonic invitations to a web-based questionnaire.

The entire active membership of the National Association of Consumer Advocates (except for persons employed in public employment or education) along with other known Consumer Law practitioners from around the United

4

States and its territories was surveyed.

Invitations to participate were also randomly sent to attorneys disclosed through internet search engine results conducted on a national level as well as randomly selected physical telephone book specialty listings where available. Invitations to participate were also randomly sent to attorneys identified through court filings in various jurisdictions and bar association directories where available.

To help practitioners understand and interpret the data below, a brief explanation of the data may help.

Section 508 Compliance

The United States Consumer Law Attorney Fee Survey is the only survey program of its type that is Section 508 Certified. This means that the survey program on which this survey runs meets all current US Federal Section 508 certification guidelines.

Section 508 is a Federal law that outlines the requirements to make online information and services accessible to users with disabilities. The government web site that outlines the requirements and helpful links regarding section 508 is located on the internet at this page: http://www.section508.gov/. All Federal agencies are required to use 508 certified software and technologies when available.

The Voluntary Product Accessibility Template was used in the design of the survey. VPAT's purpose is to assist Federal contracting officials and other buyers in making preliminary assessments regarding the availability of commercial "Electronic and Information Technology" products and services with features that support accessibility. The VPAT was developed by the Information Technology Industry Council (ITI) in partnership with the U.S. General Services Administration (GSA).

Use of the VPAT means that this survey is built on programming that includes a text element for every non-text element of the survey web page, web pages are designed so that all information displayed with color is also

5

available without color, all parts of the survey are readable without having to open another window, and other techniques to enable disabled persons to fully participate in every aspect of the Fee Survey.

It is important for the Fee Survey to be able to reach the broadest range of potential respondents possible to provide the reader with the most accurate results. By including survey feedback from the disabled demographic, the Fee Survey ensures a more representative population is able to participate so that all demographics may be included in the Fee Survey results.

## The Average and the Median: What it Means to You

To help practitioners understand and interpret the data in this report, a brief explanation of common data terminology in this report may be useful.

The tables in this Report use some terms whose meaning , while understood by statisticians, may not be clear to attorneys and Judges.

The "average" (sometimes called the arithmetic average) is calculated by adding the values of all responses, then dividing by the number of responses.

For example, five responses are reported, 3, 4, 6, 8 and 12. The average is calculated by adding their values (3 + 4 + 6 + 8 + 12 = 33), then dividing by the number of responses (5). Thus, the average is 33 / 5 = 6.6.

The "median" has a different meaning.  It is the middle value of a series of values, which is initially rank-ordered from low to high. By definition, half the numbers are greater and half are less than the median. Both mean and median values are used in this survey report as a pointer for the central area of survey results without regard to the average.

Statisticians variously agree that using the median as a statistic reduces the effect of extreme outer numbers (extremely high or low values, such as 12 in the above example). Using an average takes all numbers into accounting.

6

As an example of how using a median affects the above numbers, the same five responses are reported, 3, 4, 6, 8 and 12. The median is the middle number of the order of distribution, 6. Note, however, that the average of this same distribution of numbers is 6.6.

The median literally is the value in the middle. It represents the mid way point in a sequence of numbers. It is determined by lining up the values in the set of data (for example, in this fee survey that would be all of the individual fee rate responses logged in the survey) from the smallest on up to the largest. The one in the dead-center is the median number.

The median is not the average of the numbers (you don't add anything) in the list, but merely determine the center of the list. Some statisticians say that using the mean (instead of the average) gives less weight to the individual numbers that are on the outer limits of the survey responses and is more likely to direct the survey to the real center of the responses.

The median result of a set of numbers may be higher or lower than the average of that same set of numbers. Because the median number is commonly not the same as the average number, being either slightly above or below it, we are including both the average and the median results in many of the results in the survey.

Geographic Areas Defined

The data has been compiled in twelve geographic regions, including several states identified as their own region. This approach is based on three factors: the long-established Altman-Weil[2] regional tables, the quantity of Consumer Law attorneys that were readily identified as practicing in each state, and the geographic proximity of any one state to a nearby overall

---

[2]

Altman Weil, Inc. provides management consulting services exclusively to legal organizations. Its clients include law firms, law departments, governmental legal offices and legal vendors of all sizes and types throughout North America, the U.K. and abroad. The Altman Weil website address is http://www.altmanweil.com/ .

region.

The twelve regions for this survey are:

| | |
|---|---|
| Atlantic: | DC, DE, NC, NJ, PA, VA, WV |
| California | |
| Florida | |
| Mid West: | IA, IL, IN, KS, MI, MN, MO, ND, NE, SD, WI |
| New York | |
| North East: | CT, MA, MD, ME, NH, RI, VT |
| Ohio | |
| Pacific: | AK, HI, OR, WA |
| South: | AL, AR, GA, KY, LA, MS, OK, SC, TN |
| Texas | |
| US Territories: | Puerto Rico, Guam, American Samoa, US Virgin Islands |
| West: | AZ, CO, ID, MT, NM, NV, UT, WY |

Since this survey work first began in 1999, the states of California, Florida, New York, and Ohio have consistently had a larger overall quantity of Consumer Law practitioners than other states. For that reason, these four states are treated in the national survey report as being their own region.

The national survey report takes a national view of the survey data and also provides data for the most populous US states and metropolitan areas, providing a more detailed, specific and slightly different analysis of the survey data for the reader's review and further analysis.

In response to requests for even more detailed data, this year's survey added new questions which obtain from each survey participant the specific area of the state and a metropolitan versus non-metropolitan designation where each participant regularly practices law. The responsive data enables an even more localized set of data to be generated for geographic areas within each of area.

## Interpreting the Findings

An hourly rate may commonly be impacted by several factors,

8

including years of practice, firm size, practice location, degree of practice concentration, reputation, advertising, personal client relationships, and other factors. As a result, the information presented here may or may not be indicative of a particular attorney's reasonable hourly rate without further, more detailed analysis of the available data and other factors.

Caution is urged in the reader's review and use of the data provided by this report since no single attorney can truly be viewed as "typical" or "average" and the individual factors should be considered in arriving at any individual attorney's appropriate current hourly rate.

A Summary Profile of the Typical US Consumer Law Attorney is presented at the outset of this survey report in order to provide a summary profile of the average US Consumer Law attorney and their practice. It may be viewed as the average of all survey responses nationwide.

The National Average Table for All Firms by Region provides an at a glance view of the averages for respondents by the 12 survey regions. Presented in table format, it allows for quick and easy comparison of key data across several regions but is intended to only provide a summary statement of the key data and should be considered in tandem with the other data reported herein.

The Average Hourly Rates by Years in Practice Tables by Region presents an analysis of the impact that years in practice in Consumer Law has on the average attorney hourly rate. Each region has its own table of survey results with years in practice being divided in 9 time frames with less than one year and more than 31 years bracketing the outer limits at each end. One might think that longevity of practice would dictate an increasingly higher hourly rate and these tables report survey results that tests that assumption and, in some cases, variations are observed. Current economic trends outside of this survey test that assumption even further but are not considered in this survey.

The Median and Average Summaries Tables by Region are presented to give an overview of the practice of Consumer Law lawyers in each region. Note the use of both average and median results in this section, with the median used to reduce the effect of extremely high or low values in some

data. These tables also show the difference in survey results when comparing the average hourly rates and the median hourly rates, a factor considered by some statisticians to arrive at what they consider to be more neutral or accurate survey results.

Where necessary, insufficient data is represented by a dash mark instead of a numerical entry in the column.

10

2. Summary Profile of the Typical US Consumer Law Attorney

This section summarizes key statistics derived from the survey when viewed from a national approach. Emphasis here is on the average Consumer Law attorney in the United States without regard for any specific survey factor.

The typical Consumer Law attorney is in a small office of 4 or fewer practitioners. For the first time since the survey began over a decade ago, one state in the survey reported a majority of Consumer Law attorneys in the state were employed in larger firms, Illinois at 52%. At the same time, the Mid West region (which includes Illinois) was still dominated overall by small firm lawyers. The US Territories region was the only region that reported 100% employed 4 or fewer attorneys. At the other end of the spectrum is New York which reported that 46.2% were members of large firms employing 4 or more attorneys.

63.2% of all Consumer Law attorneys report that they practice law in a metropolitan area of 200,000 persons or more. Only 12.2% reported their practice to be in a non-metropolitan, rural area. 24.4% reported their regular practice to involve both types of population densities.

The typical Consumer Law attorney has been practicing law for 18.7 years, a slight increase over the number reported in the last survey, 17.3 years.

16.3% of all Consumer Law attorneys have been in practice 5 years or less, a slight increase from 15.4% in the last survey report, indicating the continuing slow growth of practitioners in this area of law. 58.2% have been in practice 20 years or less. Just 8.6% of all attorneys practicing any amount of Consumer Law have been in practice more than 35 years. Only 1.7% have been in practice 45 or more years.

More-experienced attorneys (those with 31 or more years of practice) make up 19.4% of survey respondents.

The region with the largest percentage of most-senior attorneys, those with 45 or more years of practice, is New York. The smallest percentage of most-senior attorneys were found in the Pacific, South and Texas regions.

11

62.8% of all respondents reported that their practice consists of 90-100% Consumer Law issues, a dramatic increase over the 49.2% reported in the last survey, but still well below the figure reported four years ago when 82.7% was the level reporting their practice to fall in the 90-100% range for Consumer Law issues.

The average Consumer Law practice is still supplemented in largest part by Bankruptcy work (an average of 14.5% in this report), as it has been for several years.

Following the recession of 2008-2009, hourly rates for Consumer Law practitioners went into a "holding pattern" but that is clearly over in many areas of the US, as observed in the post-recession data compiled in this Report.

The average Consumer Law attorney employs 1 paralegal (1.6 to be precise) whose hourly billable rate nationally averages $116, a substantial increase above the last survey report of $96. The paralegal hourly rate has been flat in the preceding four years, hovering between $93 and $96. The median hourly rate for a paralegal is $125.

The average hourly rate for the typical Consumer Law attorney (regardless of all other factors) is $361, a substantial increase from the last survey report of $304. Like the paralegal hourly rate, the attorney hourly rate nationally has also been flat in the preceding four years, ranging from $304 to $307.

The median Attorney hourly rate is $350 nationally, another substantial increase in light of the last survey report at $300. Like the hourly rates, the median hourly rate in the last four years was essentially flat, ranging from $293 to $308.

The median 25% Attorney hourly rate (the point at which 25% of all survey participants reported an hourly rate lower than this number) is $275, an increase from the last survey number reported at $241. The median 75% Attorney hourly rate is $425, an increase from the last survey report which was $355 at the 75% median point.  The median 95% Attorney hourly rate is $650, a dramatic increase from the last survey, which was $480, and only

12

$443 in the survey before that.

The average attorney raised their hourly rate 19.5 months ago. 79.8% of all Consumer Law attorneys raised their hourly rates during the last 24 months and judging from the increases noted above, the change was a substantial increase after four years of essentially no change at all.

From a more historical perspective, several observations can be made when the survey data is viewed over the last decade.

Throughout the last fifteen years, small law firms have consistently dominated the area of Consumer Law, although more recently on a slightly decreasing scale.

The average number of years in practice for Consumer Law attorneys in the last decade have gone upward, from 16 to 18.7 presently, indicating that Consumer Law remains of interest to those who practice in this area of law, but also indicating that younger attorneys are less likely to focus on Consumer Law for their future.

The number of paralegals employed by the average Consumer Law firm is tied to the economy, regardless of the cost-effectiveness of the support paralegals provide to their firm. For instance, during the recession in 2009, the employment of paralegals dropped while post-recession it has exceeded its 2007 level.

Especially notable in this survey is the increase in attorney hourly rates in the last 4 years. During the recession, it was typical for hourly rates to remain flat or even drop a few percentage points. However, post-recession, hourly rates have risen an average of 120% at all levels (i.e., the average, the median, the median 25%, the median 75%, and the median 95%). And the highest increase occurred at the highest hourly rate level, those attorneys occupying the 95% median hourly rate level.

13

### 3. Region Summary Profiles

The reports which follow are highlights of the separately published data in the Region Reports, which contain further explanatory data, analyses and information particular to each regional area.

Each analysis below contains a summary profile of the typical Consumer Law attorney practice in each region with some comparisons with prior survey data where possible along with statistical and relevant observations.

14

Summary Profile of the California Region

This section summarizes key statistics derived from the survey when viewed from the California regional approach. Emphasis here is on the average Consumer Law attorney in the California without regard for any specific survey factor.

The typical California Consumer Law attorney is in a small office of 4 or fewer practitioners (70.8%, down from last year's 75.7%) and has been practicing law for 14 years (only slightly higher than the 13 years in the last Report). Although 77.4% of survey participants reported that 90% or more of their practice was devoted to Consumer Law, 84.7% reported that Consumer Law represented the largest area of their practice time with the practice supplemented in largest part by Bankruptcy work, continuing a national trend that is now nearly 5 years old.

The average California Consumer Law firm employs 1 paralegal whose median billable hourly rate is $125 (down from the $137 in the last Report). However, 35% of all California paralegals have a billable hourly rate between $140 and $225. The upward shift in billable paralegal rates, which was first observed in the last Report, continues with 10.9% of California paralegals now billing above $174. In this region, 28.5% of Consumer Law firms report they employ no paralegal support at all.

85.9% of all California Consumer Law attorneys (regardless of all other factors) have a billable hourly rate above $325 and the average rate was $439, a decrease from the last Report.

The median California Attorney hourly rate is $425, up from the last Report's $412. The median 25% California Attorney hourly rate (the point at which 25% of all California survey participants reported an hourly rate lower than this number) is $300. The median 75% California Attorney hourly rate is $500. 36.4% of California survey participants reported an hourly rate higher than $475 and 12.41% reported an hourly rate higher than $650.

18.98% of California survey participants reported an hourly rate higher than $500.

17

## 4. Region Average Table for All Firms

This Table does not take into consideration the factors of the degree of concentration or years of practice, among other things, all of which will have a large impact on any particular person's hourly rate.

| Region: | % of Total Survey Responses From This Region: | Small Firm % of Region (<5) | Large Firm % of Region (>5) | Small Firm Average Attorney Rate In this Region | Large Firm Average Attorney Rate In this Region | Small Firm Average Paralegal Rate In this Region | Large Firm Average Paralegal Rate In this Region |
|---|---|---|---|---|---|---|---|
| Atlantic (DC DE NC NJ PA VA WV) | 15.91 | 70.1 | 29.9 | 341 | 396 | 107 | 128 |
| California | 20.75 | 70.8 | 29.2 | 446 | 423 | 132 | 137 |
| Florida | 4.85 | 59.4 | 40.6 | 389 | 373 | 114 | 123 |
| Mid West (IA IL IN KS MI MN MO ND NE SD WI) | 21.52 | 60.0 | 40.0 | 375 | 398 | 117 | 140 |
| New York | 3.94 | 53.8 | 46.2 | 434 | 494 | 93 | 137 |

29

| Region: | % of Total Survey Responses From This Region: | Small Firm % of Region (<5) | Large Firm % of Region (>5) | Small Firm Average Attorney Rate In this Region | Large Firm Average Attorney Rate In this Region | Small Firm Average Paralegal Rate In this Region | Large Firm Average Paralegal Rate In this Region |
|---|---|---|---|---|---|---|---|
| North East (CT MA MD ME NH RI VT) | 4.82 | 72.7 | 27.3 | 345 | 546 | 96 | 142 |
| Ohio | 3.64 | 75.0 | 25.0 | 317 | 313 | 71 | 115 |
| Pacific (AK HI OR WA) | 2.88 | 88.9 | 11.1 | 253 | 488 | 115 | 163 |
| South (AL AR GA KY LA MS OK SC TN) | 7.84 | 78.0 | 22.0 | 290 | 393 | 88 | 115 |
| Texas | 7.88 | 80.8 | 19.2 | 309 | 410 | 95 | 141 |
| US Territories | .45 | 100 | 0 | 550 | - | - | - |
| West (AZ CO ID MT NM NV UT WY) | 5.43 | 69.7 | 30.3 | 328 | 370 | 99 | 129 |

30

5. Region Tables

Explanation of Tables

| | |
|---|---|
| Firm Size | The average number of attorneys in the firm. |
| Median Years in Practice | The median number of years that all attorneys in this region have been in practice. |
| Concentration of Practice in Consumer Law | The percentage of practice time expended in Consumer Law (not Bankruptcy) matters. |
| Primary Practice Area | The area comprising the largest percentage of the practice work. |
| Secondary Practice Area | The largest practice area outside of Consumer Law. Where no one area dominates a dash is entered in the table. |
| Median Number of Paralegals in Firm | The median number resulting from all survey responses. |
| Last Time Rate Change Occurred (months) | The median number, expressed in months. |
| Median Paralegal Rate for All Paralegals | Expressed in dollars, ranges are avoided where possible in preference to a specific result. |
| Average Attorney Rate for All Attorneys | Expressed in dollars, ranges are avoided where possible in preference to a specific result. Note that this is not the median." |
| 25% Median Attorney Rate for All Attorneys | 25% of all survey responses are below this number, expressed in dollars. |
| Median Attorney Rate for All Attorneys | Half of all survey responses are above this number and half below, expressed in dollars. |
| 75% Median Attorney Rate for All Attorneys | 75% of all survey responses are below this number, expressed in dollars. |
| 95% Median Attorney Rate for All Attorneys | 5% of all survey responses are above this number, expressed in dollars. |

31

Following each Region Summaries Table is a table of attorney hourly rates by years in practice for that Region. Combined, these tables are intended to provide the reader with a quick and easy snapshot of the data as viewed in the Region approach to the data.

The second chart also provides a view of the average hourly rates for an attorney as measured simply by years in practice in that Region, but the upper chart should still also be considered in making such a determination.

Of course, the years in practice of an attorney is often deemed related to the experience level of an attorney and is also one of the traditional ways of determining the reasonableness of a particular attorney's hourly rate.

The years in practice alone may not be a sufficient basis, by itself, to consider a particular hourly rate to be reasonable in a particular case. Other factors also relate to the determination of a reasonable hourly rate in a particular case.

In this section of the Report, the only data included is from attorneys who indicated they practiced in this Region. All other data was excluded. It should be noted that case law indicates that the hourly rate for the jurisdiction at hand often applies to an attorney's hourly rate when practicing in that jurisdiction, rather than the hourly rate for their office location. Thus an attorney whose home office is in one state but who seeks recovery of fees in a different state may find themselves recovering only the rate that is applicable in the state where the case is pending.

32

California Region

| Firm Size | 2.6 |
|---|---|
| Median Years in Practice | 14.0 |
| Concentration of Practice in Consumer Law | 88.0 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy, Other |
| Median Number of Paralegals in Firm | 1.0 |
| Last Time Rate Change Occurred (months) | 16.8 |
| Median Paralegal Rate for All Paralegals | 125 |
| Average Attorney Rate for All Attorneys | 439 |
| 25% Median Attorney Rate for All Attorneys | 300 |
| Median Attorney Rate for All Attorneys | 425 |
| 75% Median Attorney Rate for All Attorneys | 500 |
| 95% Median Attorney Rate for All Attorneys | 700 |

| **Years Practicing Consumer Law** | **Average Attorney Hourly Rate** |
|---|---|
| <1 | 216 |
| 1-3 | 253 |
| 3-5 | 312 |
| 6-10 | 394 |
| 11-15 | 433 |
| 16-20 | 468 |
| 21-25 | 565 |
| 26-30 | 511 |
| >31 | 545 |

## 6. Selected States Summary Tables

### Explanation of Tables

| | |
|---|---|
| Firm Size | The average number of attorneys in the firm. |
| Median Years in Practice | The median number of years that all attorneys in this state have been in practice. |
| Concentration of Practice in Consumer Law | The percentage of practice time expended in Consumer Law (not Bankruptcy) matters. |
| Primary Practice Area | The area comprising the largest percentage of the practice work. |
| Secondary Practice Area | The largest practice area outside of Consumer Law. |
| Median Number of Paralegals in Firm | The median number resulting from all survey responses in this state |
| Last Time Rate Change Occurred (months) | The median number, expressed in months. |
| Median Paralegal Rate for All Paralegals | Expressed in dollars, ranges are avoided where possible in preference to a specific result. |
| Average Attorney Rate for All Attorneys | Expressed in dollars, ranges are avoided where possible in preference to a specific result. Note that this is not the median. |
| 25% Median Attorney Rate for All Attorneys | 25% of all survey responses are below this number, expressed in dollars. |
| Median Attorney Rate for All Attorneys | Half of all survey responses are above this number and half below, expressed in dollars. |
| 75% Median Attorney Rate for All Attorneys | 75% of all survey responses are below this number, expressed in dollars. |
| 95% Median Attorney Rate for All Attorneys | 5% of all survey responses are above this number, expressed in dollars. |

45

| | |
|---|---|
| Median Metropolitan Attorney Rate | Half of all survey responses in metropolitan areas of the state are above this number and half are below |
| Median Non-Metropolitan Attorney Rate | Half of all survey responses in non-metropolitan areas of the state are above this number and half are below |
| Median Attorney Rate in Northern Area of State | Half of all survey responses in this area of the state are above this number and half are below |
| Median Attorney Rate in Southern Area of State | Half of all survey responses in this area of the state are above this number and half are below |
| Median Attorney Rate in Eastern Area of State | Half of all survey responses in this area of the state are above this number and half are below |
| Median Attorney Rate in Western Area of State | Half of all survey responses in this area of the state are above this number and half are below |
| Median Attorney Rate in Central Area of State | Half of all survey responses in this area of the state are above this number and half are below |

California

| Firm Size | 2.6 |
|---|---|
| Median Years in Practice | 14.0 |
| Concentration of Practice in Consumer Law | 88.0 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Median Number of Paralegals in Firm | 1.0 |
| Last Time Rate Change Occurred (months) | 16.8 |
| Median Paralegal Rate for All Paralegals | 125 |
| Average Attorney Rate for All Attorneys | 439 |
| 25% Median Attorney Rate for All Attorneys | 300 |
| Median Attorney Rate for All Attorneys | 425 |
| 75% Median Attorney Rate for All Attorneys | 500 |
| 95% Median Attorney Rate for All Attorneys | 700 |
| Median Metropolitan Attorney Rate | 425 |
| Median Non-Metropolitan Attorney Rate | 450 |
| Median Attorney Rate in Northern Area of State | 475 |
| Median Attorney Rate in Southern Area of State | 400 |
| Median Attorney Rate in Eastern Area of State | 400 |
| Median Attorney Rate in Western Area of State | 425 |
| Median Attorney Rate in Central Area of State | 425 |

## 7. Metropolitan Area Tables

## Explanation of Table

| Firm Size | The typical firm size in this city area. |
|---|---|
| Median Years in Practice | The median number of years that all attorneys in this city area have been in practice. |
| Concentration of Practice in Consumer Law | The largest percentage group, expressed as a percentage in the midpoint of all percentile ranges (90-100% is represented as 95% in the table). |
| Primary Practice Area | The area of law comprising the largest percentage of the practice work. |
| Secondary Practice Area | The largest practice area outside of the primary practice area; more than one may be listed. |
| Median Number of Paralegals in Firm | The median number resulting from all survey responses. |
| Last Time Rate Change Occurred (months) | The median number, expressed in months. |
| Median Paralegal Rate for All Paralegals | Expressed in dollars. |
| Average Attorney Rate for All Attorneys | Expressed in dollars. Note that this is not the "median." |
| 25% Median Attorney Rate for All Attorneys | 25% of all survey responses are below this number, expressed in dollars. |
| Median Attorney Rate for All Attorneys | Half of all survey responses are above this number and half below, expressed in dollars. |
| 75% Median Attorney Rate for All Attorneys | 75% of all survey responses are below this number, expressed in dollars. |
| 95% Median Attorney Rate for All Attorneys | 5% of all survey responses are above this number, expressed in dollars. |

76

Metropolitan areas listed in this section appear alphabetically by state and not merely by the name of the city since the name may appear in more than one state. Thus, metropolitan areas in Alabama lead the list and metropolitan areas in Wisconsin are at the end of the list.

Following each Metropolitan Area Summaries Table is a table of attorney hourly rates by years in practice for that Metropolitan Area. Combined, these tables are intended to provide the reader with a quick and easy snapshot of the data as viewed in the narrow metropolitan approach to the data. The second chart also may provide a view of the average hourly rates for an attorney as measured simply by years in practice, but the upper chart should also be considered in making such a determination.

Of course, the years in practice of an attorney is often deemed related to the experience level of an attorney and is also one of the traditional ways of determining the reasonableness of a particular attorney's hourly rate.

The years in practice alone may not be a sufficient basis, by itself, to consider a particular hourly rate to be reasonable in a particular case. Other factors also relate to the determination of a reasonable hourly rate in a particular case.

In this section of the Report, the only data included is from attorneys who indicated they practiced in their metropolitan area. All non-metropolitan area data was excluded. A non-metropolitan data report by years in practice can be made available upon request. However, case law indicates that the hourly rate for the jurisdiction at hand often applies to an attorney's hourly rate when practicing in that jurisdiction, rather than the hourly rate for their office location.

Los Angeles, California

| Firm Size | 3.8 |
|---|---|
| Median Years in Practice | 10.5 |
| Concentration of Practice in Consumer Law | 91.5 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | General Practice |
| Last Time Rate Change Occurred (months) | 13.6 |
| Median Number of Paralegals in Firm | 2.8 |
| Average Paralegal Rate for All Paralegals | 111 |
| Median Paralegal Rate for All Paralegals | 125 |
| Average Attorney Rate for All Attorneys | 435 |
| 25% Median Attorney Rate for All Attorneys | 320 |
| Median Attorney Rate for All Attorneys | 450 |
| 75% Median Attorney Rate for All Attorneys | 525 |
| 95% Median Attorney Rate for All Attorneys | 710 |

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|---|---|
| <1 | 250 |
| 1-3 | 257 |
| 3-5 | 306 |
| 6-10 | 370 |
| 11-15 | 588 |
| 16-20 | 483 |
| 21-25 | 725 |
| 26-30 | 500 |
| >31 | 560 |

San Francisco, California

| | |
|---|---|
| Firm Size | 4.0 |
| Median Years in Practice | 10.5 |
| Concentration of Practice in Consumer Law | 91.6 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | General Practice |
| Last Time Rate Change Occurred (months) | 13.9 |
| Median Number of Paralegals in Firm | 3.2 |
| Average Paralegal Rate for All Paralegals | 131 |
| Median Paralegal Rate for All Paralegals | 138 |
| Average Attorney Rate for All Attorneys | 438 |
| 25% Median Attorney Rate for All Attorneys | 320 |
| Median Attorney Rate for All Attorneys | 425 |
| 75% Median Attorney Rate for All Attorneys | 525 |
| 95% Median Attorney Rate for All Attorneys | 720 |

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|---|---|
| <1 | 250 |
| 1-3 | 242 |
| 3-5 | 338 |
| 6-10 | 350 |
| 11-15 | 588 |
| 16-20 | 500 |
| 21-25 | 725 |
| 26-30 | 500 |
| 31 | 558 |

81

Sacramento, California

| Firm Size | 3.5 |
|---|---|
| Median Years in Practice | 13.0 |
| Concentration of Practice in Consumer Law | 91.6 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Rate Change Occurred (months) | 13.1 |
| Median Number of Paralegals in Firm | 2.3 |
| Average Paralegal Rate for All Paralegals | 113 |
| Median Paralegal Rate for All Paralegals | 125 |
| Average Attorney Rate for All Attorneys | 428 |
| 25% Median Attorney Rate for All Attorneys | 300 |
| Median Attorney Rate for All Attorneys | 425 |
| 75% Median Attorney Rate for All Attorneys | 510 |
| 95% Median Attorney Rate for All Attorneys | 700 |

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|---|---|
| <1 | 219 |
| 1-3 | 289 |
| 3-5 | 321 |
| 6-10 | 342 |
| 11-15 | 480 |
| 16-20 | 485 |
| 21-25 | 600 |
| 26-30 | 417 |
| >31 | 614 |

82

8. Survey Techniques

Surveys are widely considered to be important tools in any evaluation process. There are fundamentally two types of surveys: open ended questioning and closed ended questioning.

Open ended questions allow the responder to respond in any manner at all with no definite answer. Close ended questions provide a limited number of possible answers from which a response can be chosen by the responder. Because open ended questions allow for an unlimited response, they can lead to a subjective analysis and the results are almost always more difficult to interpret and quantify for analysis.

Close ended questions, however, lend their responses to easy statistical analysis.

There are five types of close ended questions.

A Likert-scale question allows for responses on a scale and allows a responder to state their feelings about an issue, such as strongly agree to strongly disagree. Multiple choice questions allow the responder to select from a finite number of responses. Ordinal questions ask the responder to rate things in relation to each other, such as selecting the most important to the least important responses about an issue. Categorical questions first place the responder in a category and then poses questions based on those categories, such as preceding questions with the initial inquiry of whether the responder is male or female. Numerical questions are used when the answer must be a real number.

Different types of questions are used in survey work so that different types of results analyses may be conducted, but the most common survey techniques are the numerical and the multiple choice question because of the ease with which conclusions may be derived from the raw data.

This survey used numerical questions and one multiple choice question. This allows for precise responses that can readily be cataloged and statistically interpreted.

124

### 9. Cases Employing Use of Survey Report

Courts frequently consider and use survey data in decision making involving fee disputes, finding it an economical and impartial means of determining contested fee issues.

Some of the cases using the *US Consumer Law Attorney Fee Survey Report* when deciding attorney fee disputes in Consumer Law cases, include the following.

*Crafton v. Law Firm of Jonathan B. Levine*, 2014 U.S. Dist. LEXIS 29690 (E.D. Wis. Mar. 7, 2014) ("Several courts in this District have recognized the Fee Survey as a reliable resource in determining the reasonableness of an attorney's hourly rate, particularly in conjunction with consideration of counsel's experience. See *Moreland v. Dorsey Thornton & Assocs., LLC*, No. 10-CV-867, 2011 U.S. Dist. LEXIS 54487, 2011 WL 1980282, *3 (E.D. Wis. May 20, 2011) (relying on counsel's website, which lists the attorney profiles, along with the United States Consumer Law Attorney Fee Survey in determining that the requested hourly rate was reasonable); *House v. Shapiro & Price*, No. 10-CV-842, 2011 U.S. Dist. LEXIS 38322, 2011 WL 1219247 (E.D. Wis. Mar. 30, 2011) (same); *Suleski v. Bryant Lafayette & Assocs.*, No. 09-CV-960, 2010 U.S. Dist. LEXIS 55353, 2010 WL 1904968 (E.D. Wis. May 10, 2010) (same).")

*Davis v. Hollins Law*, 2014 U.S. Dist. LEXIS 81024, 10-12 (E.D. Cal. June 10, 2014) Plaintiff also relies on the United States Consumer Law Attorney Fee Survey Report 2010-2011 * * * The court has reviewed the methodology underlying the Survey, and finds it credible.

*Decker v. Transworld Systems, Inc.*, 2009 WL 2916819, N.D. Ill., 2009., September 01, 2009 (finding results in the 2007 United States Consumer Law Attorney Fee Survey Report to be supported by the Laffey Matrix).

*Beach v. LVNV Funding, LLC*, 2013 U.S. Dist. LEXIS 162926 (E.D. Wis. Nov. 15, 2013) ("... several courts in this District have recognized the Fee Survey as a reliable resource in determining the reasonableness of an

attorney's hourly rate, particularly in conjunction with consideration of counsel's experience.")

*Lockmon v. Thomas F. Farrell, P.C.*, No. 12-cv-02319-CMA-MEH, 2012 U.S. Dist. LEXIS 178661, 2012 WL 6590426, at *3 (D. Colo. Dec. 18, 2012) ("the Court finds that the average rates set forth in the [Consumer Law Attorney Fee] Survey are reasonable").

*LaFountain, Jr v. Paul Benton Motors of North Carolina, LLC*, 2010 WL 4457057, (ED NC, November 5, 2010) (Senior US District Judge James C. Fox specifically finds the *US Consumer Law Attorney Fee Survey Report* to be persuasive, after rejecting the National Law Journal's fee survey and the US Attorney's Laffey Matrix as ***un***persuasive in consumer law cases: "The court does, however, find the evidence in the *United States Consumer Law Attorney Fee Survey* to be persuasive").

*Ramirez v. N. Am. Asset Servs., LLC*, 2012 U.S. Dist. LEXIS 54641 (C.D. Cal. Apr. 9, 2012) (stating that the argument opposing the *Survey* was "untethered" to reality in light of the *Survey* report's resulting data).

*Lindenbaum v. NCO Fin. Sys.*, 2011 U.S. Dist. LEXIS 78069 (E.D. Pa. July 18, 2011) (using both the *US Consumer Law Attorney Fee Survey Report* and the US Attorney's Laffey Matrix in determining a fee award).

*Suleski v. Bryant Lafayette & Associates*, 2010 WL 1904968, E.D. Wis.,2010., May 10, 2010 ("However, the United States Consumer Law Attorney Fee Survey for 2008-09 for the Midwest and California, see www.consumerlaw.org/feesurvey (last visited May 7, 2010), supports the reasonableness of the hourly rates sought by counsel in light of their experience").

*Vahidy v. Transworld Systems, Inc.*, 2009 WL 2916825, N.D. Ill., 2009., September 01, 2009 (finding results in the 2007 United States Consumer Law Attorney Fee Survey Report to be "supported by the Laffey Matrix").

*Bratton v. Thomas Law Firm PC*, 943 F. Supp. 2d 897 (N.D. Ind. 2013) ("In *Moore v. Midland Credit Mgmt., Inc.*, No. 3:12-CV-166-TLS, 2012

U.S. Dist. LEXIS 176600, 2012 WL 6217597 (N.D. Ind. Dec. 12, 2012), this Court recently analyzed the applicability of both the *Consumer Law Attorney Fee Survey Report* and the Laffey Matrix.  [904]  The Court found that the Report "provides a general range for billing rates that is useful as one factor in a court's multi-factor analysis." 2012 U.S. Dist. LEXIS 176600, [WL] at *4.")

*Beach v. LVNV Funding, LLC*, 2013 U.S. Dist. LEXIS 162926 (E.D. Wis. Nov. 15, 2013). ("As Beach points out, several courts in this District have recognized the Fee Survey as a reliable resource in determining the reasonableness of an attorney's hourly rate, particularly in conjunction with consideration of counsel's experience.")

In addition to the cases noted above, other cases using the *US Consumer Law Attorney Fee Survey Report* when deciding attorney fee disputes in Consumer Law cases include those on the following list.

## Arizona

*Savage v NIC, Inc.*, 2010 WL 2347028, D. Ariz., June 9, 2010.

*Shelago v. Marshall & Ziolkowski Enterprise, LLC*, 2009 WL 1097534, D.Ariz., 2009., April 22, 2009.

## California

*Krapf v Nationwide Credit, Inc.*, 2010 WL 4261444, C.D. Cal., October 21, 2010.

*Broad. Music Inc. v. Antigua Cantina & Grill, LLC*, 2013 U.S. Dist. LEXIS 72122 (E.D. Cal. May 20, 2013).

*Brown v. Mandarich Law Group, LLP*, 2014 U.S. Dist. LEXIS 47020 (N.D. Cal. Apr. 2, 2014).

*Castro v. Commercial Recovery Sys.*, 2014 U.S. Dist. LEXIS 33675 (N.D. Cal. Mar. 13, 2014).

*Garcia v. Resurgent Capital Servs.*, 2012 U.S. Dist. LEXIS 123889 (N.D. Cal. Aug. 30, 2012).

*De La Torre v. Legal Recovery Law Office*, 2014 U.S. Dist. LEXIS 128220 (S.D. Cal. Sept. 12, 2014).

*Verdun v. I.C. Sys.*, 2014 U.S. Dist. LEXIS 52238 (S.D. Cal. Apr. 14, 2014).

*Delalat v. Syndicated Office Sys.*, 2014 U.S. Dist. LEXIS 33756 (S.D. Cal. Jan. 23, 2014).

*Crawford v. Dynamic Recovery Servs.*, 2014 U.S. Dist. LEXIS 4057 (S.D. Cal. Jan. 10, 2014).

*Breidenbach v. Experian*, 2013 U.S. Dist. LEXIS 82093 (S.D. Cal. June 11, 2013).

## Colorado

*Gregg v. N.A.R., Inc.*, 2014 U.S. Dist. LEXIS 32017 (D. Colo. Mar. 12, 2014).

*Reichers v. Del. Asset Mgmt., LLC*, 2013 U.S. Dist. LEXIS 164981 (D. Colo. Nov. 20, 2013)

*Andalam v. Trizetto Group*, 2013 U.S. Dist. LEXIS 159656 (D. Colo. Nov. 7, 2013).

*Bock v. APIM, LLC*, 2013 U.S. Dist. LEXIS 176648 (D. Colo. Nov. 7, 2013).

*Peterson-Hooks v. First Integral Recovery, LLC*, 2013 U.S. Dist. LEXIS 73907 (D. Colo. May 24, 2013).

*Scadden v. Weinberg, Stein & Associates, LLC*, No. 12-CV-02454-PAB-MEH, 2013 U.S. Dist. LEXIS 57939, 2013 WL 1751294, at *6 (D. Colo. Apr. 23, 2013).

128

*Anderson v. Nat'l Credit Sys.*, 2010 U.S. Dist. LEXIS 134268 (D. Colo. Dec. 1, 2010).

## Florida

*Lane v. Accredited Collection Agency, Inc.*, 2014 U.S. Dist. LEXIS 58502 (M.D. Fla. Apr. 25, 2014)

*Renninger v Phillips & Cohen Associates, Ltd*, 2010 WL 3259417, M.D. Fla., August 18, 2010.

*Sandin v. United Collection Bureau, Inc.*, 2009 WL 2500408, S.D. Fla.,2009., August 14, 2009.

## Georgia

*Hebert v. Wallet Recovery Ltd.*, 2014 U.S. Dist. LEXIS 57012 (M.D. Ga. Apr. 24, 2014).

## Idaho

*Lecoultre v. Takhar Collection Servs.*, 2013 U.S. Dist. LEXIS 96443 (D. Idaho July 9, 2013).

## Indiana

*Moore v. Midland Credit Mgmt.*, 2012 U.S. Dist. LEXIS 176600 (N.D. Ind. Dec. 12, 2012)

## Nevada

*Feely v. Carrington Mortg. Serve., LLC*, 2014 U.S. Dist. LEXIS 161626 (D. Nev. Nov. 14, 2014).

*Schneider v. SSA*, 2014 U.S. Dist. LEXIS 119553 (D. Nev. Aug. 27, 2014).

## Ohio

129

*Simpson v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 10875 (S.D. Ohio Jan. 29, 2014).

*Coy v. Astrue*, 2013 U.S. Dist. LEXIS 50328 (N.D. Ohio Apr. 8, 2013).

*Hakkarainen v. Astrue*, 2012 U.S. Dist. LEXIS 188466 (N.D. Ohio June 27, 2012).

*Paris v Regent Asset Management Solutions, Inc.*, 2010 WL 3910212, S.D. Ohio, October 5, 2010.

*Wamsley v. Kemp*, 2010 WL 1610734, S.D. Ohio, 2010, April 20, 2010 (using both the national survey and the regional survey reports).

*Livingston v. Cavalry Portfolio Services, LLC*, 2009 WL 4724268, N.D. Ohio, 2009, December 02, 2009.

## Tennessee

McCutcheon v. Finkelstein Kern Steinberg & Cunningham, 2013 U.S. Dist. LEXIS 121460 (M.D. Tenn. Aug. 27, 2013)

## Texas

*Szijjarto v. Farias*, 2014 U.S. Dist. LEXIS 17406 (S.D. Tex. Feb. 12, 2014).

## West Virginia

*Pearson v. Prichard's Excavating & Mobile Home Transp.*, 2014 U.S. Dist. LEXIS 16089 (S.D. W.Va. Feb. 10, 2014).

*Harmon v. Virtuoso Sourcing Group LLC*, 2012 U.S. Dist. LEXIS 129770 (S.D. W. Va. Sept. 12, 2012).

### 10. Cases on Use of Survey Data

Additional considerations in using fee surveys may be relevant to a court's consideration in a particular case, including the following concepts drawn from the illustrative cases below.

In determining whether a requested hourly rate is appropriate, a court may look not only to past awards within the district, but the other submissions offered in support of the award such as surveys and affidavits. See, *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 2013 U.S. App. LEXIS 16555, at *37, 2013 WL 4038747 at *12 (6th Cir. Aug. 9, 2013); also see *Sykes v. Anderson*, 419 Fed. Appx. 615, 618, 2011 U.S.App. LEXIS 7699 (6th Cir. 2011) ("[t]he appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation.").

While different attorney fee surveys may exist for the Court's consideration, the question may be which "fee survey better served the purpose of assessing the skills, experience and reputation of counsel" in a particular case. *Strohl Systems Group, Inc. v. Fallon*, E.D.Pa., 2007, 2007 WL 4323008.

Moreover, a fee survey may be approved as probative evidence of the reasonableness of an hourly rate. *Taylor v. USF-Red Star Express, Inc.*, 2005 WL 555371, E.D.Pa., 2005, March 8, 2005.

However, the results of an attorney fee survey may be merely a starting point, a piece of evidence that still should be shown to apply in a particular case. See, *Ray v. Secretary of Dept. Of Health and Human Services*, 2006 WL 1006587, Fed.Cl., 2006, March 30, 2006.

The cost of performing a fee survey may be recoverable in some instances.

It is a matter of first impression that a fee applicant would hire another attorney to conduct a survey on her behalf. We cannot forget that Luessenhop has the burden of proving that her Fee Application is based upon prevailing market rates and that she

131

has the right to present evidence to support the rate she believes to be prevailing. Here, where we are required to weigh the presumptive prevailing market rate district wide, further pondering the geographical distance and economic disparities between the Plattsburgh and Albany communities and Schneider's relatively limited access to those attorneys who practice civil rights litigation in Albany, we acknowledge that Luessenhop was left with little option but to hire Mishler, an Albany attorney, to conduct a more comprehensive survey on her behalf. Luessenhop seeks $787.50 for Mishler's endeavors, which appears to be modest. Considering the amount of time this Court spent to conduct a similar survey, we do not find this amount to be unreasonable and will award it.

*Luessenhop v. Clinton County, N.Y.*    558 F.Supp.2d 247, 272 (N.D.N.Y.,2008).

### 11. Recommendations for Future Survey Data

As always, we welcome your suggestions for improvements to the survey and this Report as we continue to gather useful information in the future.

Please email your suggestions to Ron@TheLawCoach.com or you may mail them to Ronald L. Burdge, Esq., 2299 Miamisburg Centerville Road, Dayton, Ohio 45459-3817.

## 11. Survey Questions

The following pages contain the survey questions and possible answers to each question.

## US Consumer Law Attorney Fee Survey

**1. Below is a list of practice areas. Please select the practice area that represents the largest percentage of your practice time.**

- ○ Bankruptcy
- ○ Consumer Law
- ○ Criminal Law
- ○ Domestic Relations
- ○ Employment Law
- ○ Estate Planning, Probate, Wills
- ○ General Practice
- ○ Medical Malpractice
- ○ Personal Injury
- ○ Real Estate
- ○ Securities
- ○ Workers Compensation
- ○ Other

**2. What percentage of your practice is devoted to Consumer Law?**

- ○ 100
- ○ 90
- ○ 80
- ○ 70
- ○ 60
- ○ 50
- ○ 40
- ○ 30
- ○ 20
- ○ 10
- ○ 5
- ○ 0

**3. How many attorneys are in your law firm?**

- ○ 1
- ○ 2
- ○ 3
- ○ 4
- ○ 5 or more

135

## US Consumer Law Attorney Fee Survey

**4. How many years have you been practicing law?**

| | | |
|---|---|---|
| ○ 1 | ○ 16 | ○ 31 |
| ○ 2 | ○ 17 | ○ 32 |
| ○ 3 | ○ 18 | ○ 33 |
| ○ 4 | ○ 19 | ○ 34 |
| ○ 5 | ○ 20 | ○ 35 |
| ○ 6 | ○ 21 | ○ 36 |
| ○ 7 | ○ 22 | ○ 37 |
| ○ 8 | ○ 23 | ○ 38 |
| ○ 9 | ○ 24 | ○ 39 |
| ○ 10 | ○ 25 | ○ 40 |
| ○ 11 | ○ 26 | ○ 41 |
| ○ 12 | ○ 27 | ○ 42 |
| ○ 13 | ○ 28 | ○ 43 |
| ○ 14 | ○ 29 | ○ 44 |
| ○ 15 | ○ 30 | ○ 45 or more |

**5. What is your (attorney) standard billable hourly rate?**

| | | |
|---|---|---|
| ○ 0 | ○ 250 | ○ 500 |
| ○ 25 | ○ 275 | ○ 525 |
| ○ 50 | ○ 300 | ○ 550 |
| ○ 75 | ○ 325 | ○ 575 |
| ○ 100 | ○ 350 | ○ 600 |
| ○ 125 | ○ 375 | ○ 625 |
| ○ 150 | ○ 400 | ○ 650 |
| ○ 175 | ○ 425 | ○ 675 |
| ○ 200 | ○ 450 | ○ 700 |
| ○ 225 | ○ 475 | ○ 725 or more |

**6. How many full or part time paralegal or law clerk or legal assistants do you employ?**

| | | |
|---|---|---|
| ○ 0 | ○ 2 | ○ 4 |
| ○ 1 | ○ 3 | ○ 5 or more |

136

## US Consumer Law Attorney Fee Survey

**7. What is your average paralegal or law clerk or legal assistant standard billable hourly rate?**

| | | |
|---|---|---|
| ○ n/a | ○ 100 | ○ 190 |
| ○ 0 | ○ 110 | ○ 200 |
| ○ 25 | ○ 125 | ○ 210 |
| ○ 50 | ○ 140 | ○ 225 |
| ○ 75 | ○ 150 | ○ 240 |
| ○ 90 | ○ 175 | ○ 250 or more |

**8. How long ago did you change your billable hourly rate?**

| | | |
|---|---|---|
| ○ n/a | ○ 1 1/2 years | ○ 3 1/2 years |
| ○ 0 | ○ 2 years | ○ 4 years |
| ○ 1/2 year | ○ 2 1/2 years | ○ 4 1/2 years |
| ○ 1 year | ○ 3 years | ○ 5 years or more |

## US Consumer Law Attorney Fee Survey

**9. In what jurisdiction do you practice law? If you practice in more than one jurisdiction and your hourly rate is the same in all jurisdictions, then you may check more than one box below. If your rate differs in different jurisdictions, then you should complete this survey and then submit a new survey response for each additional jurisdiction where you practice.**

- [ ] Alabama
- [ ] Alaska
- [ ] Arizona
- [ ] Arkansas
- [ ] California
- [ ] Colorado
- [ ] Connecticut
- [ ] Delaware
- [ ] Florida
- [ ] Georgia
- [ ] Hawaii
- [ ] Idaho
- [ ] Illinois
- [ ] Indiana
- [ ] Iowa
- [ ] Kansas
- [ ] Kentucky
- [ ] Louisiana

- [ ] Maine
- [ ] Maryland
- [ ] Massachusetts
- [ ] Michigan
- [ ] Minnesota
- [ ] Mississippi
- [ ] Missouri
- [ ] Montana
- [ ] Nebraska
- [ ] Nevada
- [ ] New Hampshire
- [ ] New Jersey
- [ ] New Mexico
- [ ] New York
- [ ] North Carolina
- [ ] North Dakota
- [ ] Ohio
- [ ] Oklahoma

- [ ] Oregon
- [ ] Pennsylvania
- [ ] Puerto Rico
- [ ] Rhode Island
- [ ] South Carolina
- [ ] South Dakota
- [ ] Tennessee
- [ ] Texas
- [ ] Utah
- [ ] Vermont
- [ ] Virginia
- [ ] Virgin Islands US
- [ ] Washington
- [ ] West Virginia
- [ ] Wisconsin
- [ ] Wyoming
- [ ] Washington DC

**10. In what geographical area of your state do you regularly practice? If more than one area, mark all that apply.**

- [ ] North
- [ ] South

- [ ] East
- [ ] West

- [ ] Central

**11. Do you regularly practice in a metropolitan area of more than 200,000 persons or less than 200,000 persons?**

- ( ) Both more and less
- ( ) More than 200,000
- ( ) Less than 200,000

## 12. About the Editor

Ronald L. Burdge is an attorney and the founder of Burdge Law Office Co LPA in Dayton, Ohio. Mr. Burdge is in private practice in Ohio, Kentucky and Indiana and elsewhere by *pro hac* admission, and is a nationally known Consumer Law attorney. For over a decade, Mr. Burdge has testified as an expert witness on Consumer Law and Attorney Fee issues in numerous state and federal courts. He is a member of the Total Practice Management Association and numerous professional associations.

He has authored numerous articles and lectured widely on Attorney Fee issues and Consumer Law and Consumer Trial Practice, and is a member of the American Society of Legal Writers and the Legal Writing Institute. Mr. Burdge has also lectured widely at national and state Consumer Protection Law seminars before attorneys, judges, and both public and business groups, and has testified before the Ohio Legislature and its committees on Consumer Law issues.

He has served as Board Examiner for the National Board of Trial Advocacy and has extensive Consumer Law trial and appellate experience in individual and class action cases involving lenders, retail sales practices, defective products, and warranty litigation. Since 2004, he remains the only Consumer Law attorney in Ohio who has been named to Ohio Super Lawyer status by *Law & Politics* Magazine and Thomson Reuters, and whose practice is entirely devoted to Consumer Law work for consumers only. Thomson Reuters is the world's leading source of intelligent information for businesses and professionals. In 2004, he was named Trial Lawyer of the Year by the National Association of Consumer Advocates and in 2010 he was elected to the Board of the National Association of Consumer Advocates.

Copyright 2014
by R.L.Burdge, Burdge Law Office Co LPA, Dayton, Ohio

Exhibit E